510 A.2d 1217

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Nicholas RHODES, Appellee.**

Supreme Court of Pennsylvania.

Submitted Dec. 6, 1985.

Decided June 6, 1986.

538

Eric B. Henson, Deputy Dist. Atty., Gaele McLaughlin Barthold, Chief/Pros. Appeals, Leslie A. Sudock, Philadelphia, for appellant.

Alexander Hemphill, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

The principal issue raised by this appeal is whether the evidence introduced at trial is sufficient to sustain appellee's conviction for rape under section 3121 of the Crimes Code, 18 Pa.C.S.A. § 3121; to make that sufficiency determination under the circumstances of the instant case, however, it is first necessary to delineate the elements and define the scope of section 3121.

In reviewing the sufficiency of the evidence to sustain a conviction, we apply the usual standard of review:

[W]e must view the evidence in the light most favorable to the Commonwealth as verdict winner, accept as true all the evidence and all reasonable inferences upon which, if believed, the jury could properly have based its verdict, and determine whether such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt.

*Commonwealth v. Scatena,* 508 Pa. 512, 518, 498 A.2d 1314, 1317 (1985). Viewed in that light, the record discloses the following.

At approximately 4:20 p.m. on February 18, 1982, the victim, a third grader at the Hunter School in Philadelphia, left her home to go to a cooking class at the nearby Waterloo Playground. The victim had celebrated her eighth birthday the prior month (January 9th). After playing tag for awhile with a playmate at the playground, she went inside a building there and watched two men playing chess. One of the men was twenty year old Nicholas Rhodes, the appellee in this case. Nicholas Rhodes lived across the street from the victim and her family and knew her for about three years. The victim knew the appellee as "Nicky."

When he was done playing chess, appellee asked the victim if she wanted to go somewhere, whereupon he led her to an abandoned building near the playground and took her upstairs to a dirty, unfurnished room on the second floor. Appellee instructed her to lay down on the dirty floor and to pull her legs up. He then laid on top of her and touched her "butt" with "something" in his pubic area.[1] The victim felt pain when appellee "touched her" this way,

---

1. At trial, the victim was unable to respond to numerous questions during her direct examination: "After you finished watching them play chess, what did you do?" "What happened after you put your legs up? What did Nicky [appellee] do?" "[W]hat did Nicky do after you put your legs up?" "Now, what did Nicky do when he laid down on you?" She was, however, able to provide answers to these questions after they were rephrased for her. She was also unable to describe how or with what she had been touched, but she was permitted to "point for the Judge where it is, what thing, that is, he touched you with, where it is on Nicky."

and she "told him to stop." In a short while, appellee left the building with the victim who then walked to her home in the dark.

When the victim arrived at her home at about 7:30 p.m.–8:00 p.m., her mother observed her crying, frightened and smelling of dog feces which was on her clothing and in her hair. The victim's mother immediately examined her and found her underwear bloody and turned inside out, her rectum torn and bleeding, and her vagina red. The victim's mother called the police and the child was taken to a hospital where a medical examination tested positively for sperm in both the "vulvular sample" and the "rectal sample", and revealed a "recto-vaginal fissure" (a tear). Lab results confirmed the presence of blood and "seminal stains" on the victim's underwear. Appellee was arrested at his home later that evening, and charged with rape, statutory rape, involuntary deviate sexual intercourse, indecent assault, indecent exposure, corruption of minors and unlawful restraint.

Appellee knowingly and intelligently waived his right to a jury trial, and was tried on August 11, 1982 before the Honorable Alfred J. DiBona, Jr., in the Court of Common Pleas of Philadelphia. The Commonwealth presented the above record evidence by testimony of the victim, her mother, the arresting officer and stipulations of fact regarding the medical and laboratory tests. Appellee testified in his defense and denied having seen the victim on February 18, 1982. He claimed to have been home from about 3:30 p.m. until his arrest that evening. Appellee's mother, who resided with appellee, testified that he had been out of the house earlier in the day and that when he returned home (she did not say what time he returned), she did not notice any unusual odors about him (such as the odor of dog feces). In an attempt to discredit the child victim's testimony, defense counsel questioned her about a prior inconsistent statement she had given to the police officer to the effect that the incident had taken place in an alley.

Judge DiBona adjudicated appellee guilty of rape, statutory rape, involuntary deviate sexual intercourse, indecent assault, indecent exposure and corruption of minors.[2] Post trial motions were denied and appellee was sentenced to a term of imprisonment of six to twenty years on the conviction for rape (a felony of the first degree) and to a concurrent term of imprisonment of six to twenty years on the conviction for involuntary deviate sexual intercourse (a felony of the first degree). Additionally, appellee received a sentence of five years probation on the conviction for corruption of minors (a misdemeanor of the first degree) and a suspended sentence on the conviction for statutory rape (a felony of the second degree). No sentences were imposed on the remaining convictions. Appellee filed a motion for reconsideration of sentences which was summarily denied by Judge DiBona without a hearing.

Appellee's appeal to the Superior Court challenged the sufficiency of the evidence to sustain his convictions,[3] challenged the sentences as "too harsh and severe for a sexual assault upon a young girl without violence or injury" and alleged an abuse of discretion in the denial of his motion for reconsideration without a hearing or written statement explaining the denial. A panel of the Superior Court (per Wieand, J., joined by Cirillo, J.; Cavanaugh, J., dissenting) found the evidence sufficient to sustain the convictions for

**2.** 18 Pa.C.S.A. §§ 3121, 3122, 3123, 3126, 3127 and 6301, respectively. The Commonwealth had charged appellee with four separate counts of rape corresponding to each separate category of rape set forth in section 3121(1)–(4). *See* text of section 3121, *infra* at 543–544.

**3.** Appellee's post trial motions and Superior Court brief challenged the sufficiency of the evidence primarily on the grounds that the victim's testimony was so inconsistent with her prior statements to the police as to be untrustworthy and unreliable as a matter of law. Nevertheless, the Superior Court found the post trial motions and brief adequate to raise the issue of sufficiency of the evidence to sustain the convictions generally. Although it is a close question, we will accept the Superior Court's finding in this regard in the interests of justice and judicial economy.

involuntary deviate sexual intercourse,[4] statutory rape,[5] and corruption of minors,[6] but insufficient to sustain the conviction for rape under 18 Pa.C.S.A. § 3121. 332 Pa.Super. 273, 279, 481 A.2d 610, 613 (1984). The Superior Court further held that since "we cannot be certain that the trial court's sentences for [involuntary deviate sexual intercourse and corruption of minors] would have been the same if it had known that the conviction for forcible rape would be set aside ... we will vacate all judgments of sentence and remand for resentencing." *Id.* In effect, the Superior Court's disposition reduces appellee's potential maximum sentence, since rape, a felony of the first degree, carries a twenty years maximum sentence of imprisonment, while statutory rape, a felony of the second degree, carries with it a ten years maximum sentence of imprisonment. *See* 18 Pa.C.S.A. § 1103(1) and (2).

We granted the Commonwealth's petition for allowance of appeal from the Superior Court's order, and we now reverse.

Section 3121 of the Crimes Code establishes the crime of rape and its elements as follows:

4. **18 Pa.C.S.A. § 3123. Involuntary deviate sexual intercourse**
 A person commits a felony of the first degree when he engages in deviate sexual intercourse with another person:
 (1) by forcible compulsion;
 (2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;
 (3) who is unconscious;
 (4) who is so mentally deranged or deficient that such person is incapable of consent; or
 (5) who is less than 16 years of age.

5. **18 Pa.C.S.A. § 3122. Statutory rape**
 A person who is 18 years of age or older commits statutory rape, a felony of the second degree, when he engages in sexual intercourse with another person not his spouse who is less than 14 years of age.

6. **18 Pa.C.S.A. § 6301. Corruption of minors**
 (a) **Offense defined.**—Whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age ... is guilty of a misdemeanor of the first degree.

**Rape**

A person commits a felony of the first degree when he engages in sexual intercourse with another person not his spouse:

(1) by forcible compulsion;

(2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;

(3) who is unconscious; or

(4) who is so mentally deranged or deficient that such person is incapable of consent.

18 Pa.C.S.A. § 3121(1)–(4). Labelling this section as "forcible rape," the Superior Court held:

It is ... apparent ... that the Commonwealth failed to prove a forcible rape. There is not one iota of evidence that sexual intercourse was accomplished by forcible compulsion or by threat of forcible compulsion. Similarly, there was no evidence that the child was unconscious or mentally deficient. Although we do not minimize the heinous nature of appellant's act, it seems clear that the act of vaginal intercourse was criminal because of the provisions of 18 Pa.C.S. § 3122 defining statutory rape and not because it was a forcible rape as defined in 18 Pa.C.S. § 3121.

332 Pa.Super. at 278, 481 A.2d at 613.

While we agree with the Superior Court that there was no evidence that the child victim in this case was unconscious, 18 Pa.C.S.A. § 3121(3), we find the evidence sufficient to establish beyond a reasonable doubt the crime of rape by forcible compulsion, threat of forcible compulsion and with a victim who was so mentally deficient by virtue of her young age as to be legally incapable of consent. 18 Pa.C.S.A. § 3121(1), (2) and (4). (Appellee had been charged by the Commonwealth under all four of the categories of rape. *See* note 2, *supra.*)

The Crimes Code of 1972 [7] represented a significant departure from the prior criminal law of Pennsylvania that had been embodied in the Penal Code of 1939. The Crimes

7. Act of December 6, 1972, P.L. 1482, No. 334, effective June 6, 1973.

Code worked major substantive changes in the criminal law and did not simply recodify and reclassify existing laws, although the Crimes Code did draw from the concepts of and experience under the Penal Code of 1939 and the common law. *Three Prosecutors Look At The New Pennsylvania Crimes Code,* 12 Duq.L.Rev. 793, 804 (1974). One of the drafters of the Crimes Code, Sheldon S. Toll, has remarked that perhaps the most significant departure from the Penal Code of 1939 and the early common law was the rejection of the very strict approach to interpretation of substantive criminal laws in favor of a more common sense and flexible approach. *Criminal Law Reform in Pennsylvania: The New Crimes Code,* S.Toll, 78 Dick.L.Rev. 1, 3 (1973) (hereinafter *Toll* ).

Thus, the Crimes Code provides:

The provisions of this title shall be *construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes* stated in this title *and the special purposes of the particular provision involved.* The discretionary powers conferred by this title shall be exercised in accordance with the criteria stated in this title and, in so far as such criteria are not decisive, to further the general purposes stated in this title.

18 Pa.C.S.A. § 105 (emphasis added). The preceding section of the Crimes Code sets forth its purposes:

**Purposes**

The general purposes of this title are:

(1) To forbid and prevent conduct that unjustifiably inflicts or threatens substantial harm to individual or public interest.

(2) To safeguard conduct that is without fault from condemnation as criminal.

(3) To safeguard offenders against excessive, disproportionate or arbitrary punishment.

(4) To give fair warning of the nature of the conduct declared to constitute an offense, and of the sentences that may be imposed on conviction of an offense.

(5) To differentiate on reasonable grounds between serious and minor offenses, and to differentiate among offenders with a view to a just individualization in their treatment.

18 Pa.C.S.A. § 104.

The Crimes Code's provisions on Sexual Offenses are an amalgam of prior criminal law (judicial and statutory), the Model Penal Code promulgated by the American Law Institute in October, 1962 (Proposed Official Draft), and the recommendations of the Pennsylvania Bar Association's Special Commission on Crime and Juvenile Delinquency in conjunction with the Joint State Government Commission. Comment, *Revision of the Law of Sex Crimes In Pennsylvania and New Jersey*, 78 Dick.L.Rev. 73, 77 (1973) (hereinafter *Comment*). The Penal Code of 1939 defined the crime of rape, as did most jurisdictions, in accordance with the common law as "unlawful carnal knowledge of a woman, forcibly and against her will."[8] The essential elements of the crime of rape under this definition were penetration, however slight, force and the lack of consent of the woman. *Wharton's Criminal Law*, Torcia, C., (14th ed.) § 283 (hereinafter *Wharton's*); *Commonwealth v. Walker*, 468 Pa. 323, 362 A.2d 227 (1976); *Commonwealth v. Brown*, 184 Pa.Super. 494, 136 A.2d 138 (1957). The "force" required in this formulation of the crime of rape was not the force inherent in the act of penetration but, rather, the force actually used or threatened to overcome or prevent resistance by the victim. *Wharton's supra* at § 288. Since the focus of the element of force was on its use to overbear a victim's will and demonstrate lack of consent,[9] the cases held that the "requisite force need not have been actually

8. Act of June 24, 1939, P.L. 872, former 18 P.S. § 4721, based on earlier Act of March 31, 1860, P.L. 382, § 91.

9. "Against her will" was fairly synonymous with "lack of consent." *Wharton's, supra* at § 287.

applied, but may have been constructive or implied", as where the victim was unconscious, insane, drugged, or so young as to have been legally incapable of consenting to the act of sexual intercourse. *Comment, supra* at 74; *Commonwealth v. Brown, supra; Commonwealth v. Stephens,* 143 Pa.Super. 394, 17 A.2d 919 (1941); *Wharton's, supra* at § 287, "Without Consent."

The Penal Code of 1939 also contained a provision defining the crime of statutory rape as the "unlawful carnal knowledge and abuse of a woman child under the age of sixteen (16) years, if the jury shall find that the woman child was" of good repute and did not consent.[10] *See Commonwealth v. Walker, supra.*

Sexual assault crimes have always presented perplexing, controversial and emotionally charged problems for the criminal justice system. A non-exclusive list of these problems under the common law and the Penal Code of 1939 would include: what constitutes "unlawful carnal knowledge" or "sexual intercourse" (are intercourse "per os" or "per anus" included)?; the quality and quantity of force necessary to constitute "forcible rape", or conversly, the degree of resistance required and/or expected of the victim; when will a victim be deemed incapable of consent?; when will consent be deemed vitiated by fraud, deception, intoxication, incapacity, etc.?; perceived doubts about the reliability of a victim's accusations; etc. *See, e.g., In the Matter of Pittsburgh Action Against Rape,* 494 Pa. 15, 34–35, 428 A.2d 126, 135–150 (1981) (Larsen, J., dissenting); *Wharton's supra* at Chapter 17; *Comment, supra.* In response to

**10.** The Act of June 24, 1939, P.L. 872, § 721, 18 P.S. § 4721, as amended provided:

(b) Whoever, being of the age of sixteen (16) years and upwards, unlawfully and carnally knows and abuses any woman child under the age of sixteen (16) years with her consent, is guilty of statutory rape, a felony ...

Upon the trial of any defendant charged with the unlawful carnal knowledge and abuse of a woman child under the age of sixteen (16) years, if the jury shall find that such woman child was not of good repute, and that the carnal knowledge was with her consent, the defendant shall be acquitted of rape, and be convicted of fornication.

some of these problems, and in light of modern sociological and psychological views concerning crimes of rape and other sexual assaults, the American Law Institute made comprehensive proposals regarding "Sexual Offenses" in Article 213 of the Model Penal Code (MPC), 10 Uniform Laws Annot. (Master ed.).

The Proposed Official Draft of the Model Penal Code, adopted in October, 1962 by the American Law Institute, stirred great interest and intense debate among the legislatures of many, if not most, of the states of the union, acting as a catalyst for the revision and reform of criminal laws throughout the country. *See generally, Wharton's, supra* at Chapter 17, and *Comment, supra.* Among the most controversial and hotly debated of the Model Penal Code's provisions were those of Article 213 classifying the Sexual Offenses. Article 213 proposed the following categories of sexual offenses:

### § 213.1. Rape and Related Offenses

(1) **Rape.** A male who has sexual intercourse with a female not his wife is guilty of rape if:

(a) he compels her to submit by force or by threat of imminent death, serious bodily injury, extreme pain or kidnapping, to be inflicted on anyone; or

(b) he has substantially impaired her power to appraise or control her conduct by administering or employing without her knowledge drugs, intoxicants or other means for the purpose of preventing resistance; or

(c) the female is unconscious; or

(d) the female is less than 10 years old. Rape is a felony of the second degree unless (i) in the course thereof the actor inflicts serious bodily injury upon anyone, or (ii) the victim was not a voluntary social companion of the actor upon the occasion. of the crime and had not previously permitted him sexual liberties, in which cases the offense is a felony of the first degree.

**(2) Gross Sexual Imposition.** A male who has sexual intercourse with a female not his wife commits a felony of the third degree if:

(a) he compels her to submit by any threat that would prevent resistance by a woman of ordinary resolution; or

(b) he knows that she suffers from a mental disease or defect which renders her incapable of appraising the nature of her conduct; or

(c) he knows that she is unaware that a sexual act is being committed upon her or that she submits because she mistakenly supposes that he is her husband.

Section 213.2 of the Model Penal Code established the category of Deviate Sexual Intercourse by Force or Imposition. Under this section, deviate sexual intercourse by force is a felony of the second degree and contains subcategories of offenses substantially similar to the subcategories of rape. *Compare* MPC § 213.1(1) (a)–(d) *with* MPC § 213.2(1) (a)–(d). Deviate sexual intercourse by imposition is a felony of the third degree and contains subcategories of offenses substantially similar to the subcategories of gross sexual imposition. *Compare* MPC § 213.1(2)(a)–(c) *with* MPC § 213.2(2)(a)–(c). The Model Penal Code also proposed establishment of the sexual offenses of corruption of minors and seduction, sexual assault and indecent exposure. MPC §§ 213.3, 213.4 and 213.5, respectively.[11]

---

**11.** The Model Penal Code also recommended "Provisions Generally Applicable to Article 213." MPC § 213.6. The Model Penal Code provides that it shall be a defense to prosecution under sections 213.3 and 213.4 that the "alleged victim had, prior to the time of the offense charged, engaged promiscuously in sexual relations with others." MPC § 213.6(3). It also contains a "prompt reporting" requirement and a requirement that, in order to secure a conviction for any felony under Article 213, the testimony of the alleged victim must be corroborated and the jury instructed to regard the testimony of the alleged victim with "special care in view of the emotional involvement of the witness and the difficulty of determining the truth with respect to alleged sexual activities carried out in private." MPC § 213.6(4) and (5). In this respect, the Model Penal Code was not very progressive vis a vis these "special rules" governing rape prosecutions. These pernicious "special rules" perpetuated many of the myths of rape and had ancient legal roots that have been "attributed to Lord Chief

The Model Penal Code was the focal point of ten years of legislative consideration and debate over several senate and house versions of a revised crimes code which culminated in enactment of the Pennsylvania Crimes Code in 1972. *Toll, supra; Comment, supra* at 73, 77–86. Comparison of the substantive Sexual Offenses provisions of the Model Penal Code with those of the Crimes Code discloses that the Model Penal Code indeed served as a "model" in many respects, but was only the starting point. From that model, the General Assembly proceeded to make substantial modifications, accepting some of the Model Penal Code's recommendations in whole or in part, and rejecting others.

With this background in mind, we now turn to construction of section 3121 of the Crimes Code, guided by the principle that the "provisions of [the Crimes Code] shall be construed, if possible, according to the fair import of their terms" and, if susceptible of differing constructions, interpreted according to the general purposes of the title and the special purposes of the particular section. 18 Pa.C.S.A. § 105. To reiterate, a person commits rape, a felony of the first degree, when he engages in sexual intercourse with another person not his spouse: "(1) by forcible compulsion; (2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution; (3) who is unconscious; or (4) who is so mentally deranged or deficient that such person is incapable of consent."

Insight into the purposes of section 3121 of the Crimes Code can be achieved by comparing section 3121 to section 213.1 of the Model Penal Code. (The Historical Note to

Justice Matthew Hale, the seventeenth-century English jurist, who wrote: 'Rape is an accusation easily to be made and hard to be proved, and harder still to be defended by the party accused, tho never so innocent.' Hale, *History of the Pleas of the Crown*, Vol. 1, 634 (R.H. Small 1847)." *Matter of Pittsburgh Action Against Rape*, 494 Pa. 15, 428 A.2d 126, 140–141 (1981). Modern social, legal and psychological thinking has thoroughly discredited these "special rules," and our Crimes Code, with amendments in 1973 and 1976, has finally discarded the last vestiges of these ill-conceived rules. 18 Pa.C.S.A. Ch. 31, subch. A, §§ 3101–3107; *see Matter of Pittsburgh Action Against Rape, supra*, 494 Pa. at 43–49, 428 A.2d at 140–43 (1981) (Larsen, J., dissenting).

section 3121 states "This section is similar to § 213.1 of the Model Penal Code.") The first observation is that the Pennsylvania Legislature rejected the three level degree of severity structure envisioned by the Model Penal Code. Under the latter, a person who, in the course of committing one of the four enumerated categories of rape, inflicts "serious bodily injury" or chooses a victim "not a voluntary social companion of the actor [who] had not previously permitted him sexual liberties" commits a felony of the first degree; otherwise he commits a felony of the second degree. A person who commits one of the three enumerated categories of gross sexual imposition commits a felony of the third degree. In contrast, the Pennsylvania legislature created the crime of rape and treated each of the four enumerated categories with equal severity, classifying all as felonies of the first degree. There are also significant differences in the various enumerated categories.

Section 3121(3) of the Crimes Code is similar to MPC § 213.1(1)(c) and establishes a category of rape where the victim is unconscious, as did the Model Penal Code. 18 Pa.C.S.A. § 3121(3). From there, the categories differ markedly.

Section 3121(1) defines the category of rape where the actor engages in sexual intercourse by "forcible compulsion." The comparable provisions of the Model Penal Code are more specifically directed at acts of physical force and/or acts of violence by the terminology "compels her to submit by force or by threat of imminent death, serious bodily injury, extreme pain or kidnapping." MPC § 213.-1(1)(a). "Forcible compulsion," therefore, would seem to have a broader meaning than the comparable provisions of the Model Penal Code with its emphasis upon physical force and violence. The "fair import" of the phrase "forcible compulsion" may be gathered by looking at the common, accepted meaning of those words.

The Oxford English Dictionary provides the following definitions:

**Forcible:** a. 1. Done by force; involving the use of force or violence; *esp.*, in law ...

**Force:** n. Strength, Power.

1. Physical strength, might or vigour, as an attribute of human beings.

2. As an attribute of physical action or movement: strength, impetus, violence or intensity of effect.

3. Power or might....

 \* \* \* \* \* \*

5. Physical strength or power exerted upon an object; *esp.* the use of physical strength to constrain the action of persons; violence or physical coercion.

... (d) In non-material sense: Constraint or compulsion or constraint upon .... to act under self-constraint and against one's natural impulses. Under a force: under compulsion.

6. Mental or moral strength.... power of vigorous and effective action, or of overcoming resistance.

7. Of things (in non-material or moral relations): Power to influence, affect or control (*esp.* men in their actions ...)

[other definitions omitted]

**Force:** v. [includes]

1. To use violence; to violate, ravish (a woman).

2. To press hard upon ...

3. To constrain by force (whether physical or moral); to compel; to overcome the resistance of....

4. To compel, constrain or oblige (a person, oneself, etc.) *to do* a thing....

[other definitions omitted]

**Compulsion:** n.

The action, or an act, of compelling, or the condition of being compelled; constraint, obligation coercion.

**Compel:** v.

1. To urge irresistably, to constrain, oblige, force: a. a person *to do* a thing (the usual const.) ...

2. a. To take or get by force, to extort. b. To constrain (an action) ... to command.

3. To force ... to drive forcibly.

4. To overpower, constrain.

[other definitions omitted]

Webster's New Collegiate Dictionary defines "force" not only as "strength or energy exerted or brought to bear; to do violence," but also to "compel by physical, moral or intellectual means," and "violence, compulsion or constraint exerted upon or against a person or thing." Synonyms offered are "compel, coerce, constrain, oblige," which synonyms have the: *"shared meaning element:* to make someone or something yield. Force, the general term, implies an overcoming of resistance by the exertion of strength, weight, power, stress, or duress."

In common usage, therefore, the phrase "forcible compulsion" clearly connotes more than the exercise of sheer physical force or violence as the Superior Court has so limited section 3121(1) in this case and others.[12] The phrase also connotes the act of using superior force—physical, moral psychological, or intellectual—to compel a person to do a thing against that person's volition and/or will.

■ Section 311 of the Crimes Code, enacted simultaneously with section 3121, lends further support for the construction of "forcible compulsion" as an act, including but not limited to physical force or violence, used to compel a person to engage in sexual intercourse against that person's will. Section 311 provides, in relevant portion:

Consent

(a) General rule.—The consent of the victim to conduct charged to constitute an offense or to the result thereof is a defense if such consent negatives an element of the offense or precludes the infliction of the harm or

12. *Commonwealth v. Biggs,* 320 Pa.Super. 265, 467 A.2d 31 (1983); *Commonwealth v. Mlinarich,* 345 Pa.Super. 269, 498 A.2d 395 (1985), petition for allowance of appeal pending.

evil sought to be prevented by the law defining the offense.

\* \* \* \* \* \*

(c) **Ineffective consent.**—Unless otherwise provided by this title or by the law defining the offense, assent does not constitute consent if:

(1) it is given by a person who is legally incompetent to authorize the conduct charged to constitute the offense;

(2) it is given by a person who by reason of youth, mental disease or defect or intoxication is manifestly unable or known by the actor to be unable to make a reasonable judgment as to the nature or harmfulness of the conduct charged to constitute the offense;

(3) it is given by a person whose improvident consent is sought to be prevented by the law defining the offense; or

(4) it is induced by force, duress or deception of a kind sought to be prevented by the law defining the offense.

18 Pa.C.S.A. § 311. Effective consent to sexual intercourse will negate a finding of forcible compulsion. *See, e.g. Commonwealth v. Williams*, 476 Pa. 557, 563, 383 A.2d 503 (1978) (under 18 Pa.C.S.A. § 3123, involuntary deviate sexual intercourse, this Court stated that "lacerations in the area of the anus and vagina and the injury to the mouth clearly suggest a forcible *rather than a consensual act.*") The Superior Court has held that the "degree of force involved in rape and involuntary sexual deviate intercourse is defined, not in terms of the physical injury to the victim, but in terms of the effect it has on the victim's volition." *Commonwealth v. Irvin*, 260 Pa.Super. 122, 126, 393 A.2d 1042, 1044 (1978). Accordingly, the "force necessary to support convictions for rape and involuntary deviate sexual intercourse need only be such as to establish lack of consent and to induce the woman to submit without additional resistance ... The degree of force required to constitute rape [or involuntary deviate sexual intercourse] is relative and depends upon the facts and particular circumstance of the case." *Commonwealth v. Williams*, 294 Pa.Super. 93,

97, 439 A.2d 765, 768 (1982); *Commonwealth v. Rough,* 275 Pa.Super. 50, 418 A.2d 605 (1980).[13]

■ From all of the foregoing, therefore, we hold that "forcible compulsion" as used in section 3121(1) includes not only physical force or violence but also moral, psychological or intellectual force used to compel a person to engage in sexual intercourse against that person's will.

■ Closely related to section 3121(1) is section 3121(2) which applies to the situation where "forcible compulsion" is not actually used but is threatened. That section uses the phrase "by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution." The Model Penal Code used the terminology "compels her to submit by any threat that would prevent resistance by a woman of ordinary resolution" and graded that offense as gross sexual imposition, a felony of the third degree. The Pennsylvania legislature rejected the concept that sexual intercourse compelled by "gross imposition" should be graded as a less serious offense and, therefore, enacted section 3121(2). By use of the phrase "person of reasonable resolution," the legislature introduced an objective standard regarding the use of *threats* of forcible compulsion to prevent resistance (as opposed to actual application of "forcible compulsion.")

The determination of whether there is sufficient evidence to demonstrate beyond a reasonable doubt that an accused engaged in sexual intercourse by forcible compulsion (which we have defined to include "not only physical force or violence, but also moral, psychological or intellectual force used to compel a person to engage in sexual intercourse against that person's will," *supra,* at 555), or by the threat of such forcible compulsion that would prevent resistance by a person of reasonable resolution is, of course, a determination that will be made in each case based upon the totality of the circumstances that have been presented to the fact finder. Significant factors to be weighed in that determina-

13. In *Irvin, Rough* and *Williams,* however, the actors did employ physical force or the threat of physical force to varying degrees.

tion would include the respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress. This list of possible factors is by no means exclusive.

It is neither desirable nor appropriate to attempt to delineate all of the possible circumstances that might tend to demonstrate that sexual intercourse was engaged in by forcible compulsion or by the threat of forcible compulsion within the meaning of section 3121(1) and (2). That delineation will evolve in the best tradition of the common law—by development of a body of case law applying section 3121 (as it has been here construed) and the principles of construction set forth in the Crimes Code. When forcible compulsion (used or threatened) consists of physical force or violence, relatively tangible circumstances, testimony and other evidence will tend to prove the existence of such. When forcible compulsion (used or threatened) consists of "moral, phychological or intellectual force," the force may be less tangible but is not less susceptible of proof, and the critical circumstances and evidence here will be those which tend to prove or disprove compulsion or lack of consent, *i.e.* that such force was "used to compel a person to engage in sexual intercourse against that person's will."[14] In this regard, the excellent analogy made by Mr. Justice Hutchinson in his concurring opinion is a point well made—proof of compulsion and lack of consent under section 3121(1) and (2) is not unlike proof of compulsion or coercion in the context of confessions challenged by a defendant as involuntary. The task of the fact finder in each case will be essentially

**14.** It is not necessary to prove that the victim actually resisted in order to prove that the act of sexual intercourse was against the victim's will and/or without consent. Section 3107 provides that the "victim need not resist the actor in prosecutions under" chapter 31 and makes it clear that lack of consent is not synonymous with lack of resistance. 18 Pa.C.S.A. § 3107.

the same, the determination of whether the victim or the defendant was forced to do a thing (respectively, to engage in sexual intercourse or to confess to a crime) against his or her will.[15]

■ Reviewing the evidence in the instant case, we find it sufficient to demonstrate beyond a reasonable doubt that appellee engaged in sexual intercourse with his eight year old victim by forcible compulsion and by the threat of forcible compulsion. Appellee, a twenty year old man who knew the child victim and her family for three years and who the victim knew as Nicky, lured the victim into an abandoned, filthy building and instructed her to lay down and pull her legs up, whereupon he forced his will upon her and engaged in acts of sexual and deviate sexual intercourse to the extent that she was bleeding and torn.

There is an element of forcible compulsion, or the threat of forcible compulsion that would prevent resistance by a person of reasonable resolution, inherent in the situation in which an adult who is with a child who is younger, smaller, less psychologically and emotionally mature, and less sophisticated than the adult, instructs the child to submit to the performance of sexual acts. This is especially so where the child knows and trusts the adult. In such cases, forcible compulsion or the threat of forcible compulsion derives from the respective capacities of the child and the adult sufficient to induce the child to submit to the wishes of the adult ("prevent resistance"), without the use of physical force or violence or the explicit threat of physical force or violence. As Judge Cavanaugh noted in his dissenting opinion in this case, "the illicit commands of this twenty

15. It should be clear from the foregoing that the element of forcible compulsion that will demonstrate rape under section 3121 requires much more than simply convincing an initially reluctant consenting adult to engage in sexual intercourse by moral, psychological or intellectual persuasion. It was not the legislature's intent to condemn such conduct as rape. See 18 Pa.C.S.A. § 104(1), (2) and (4) (purposes of the Crimes Code). Rather, section 3121(1) and (2) requires actual forcible compulsion or the threat thereof which is used to compel the victim to engage in sexual intercourse against that person's will such that the act of sexual intercourse cannot be regarded as consensual.

year old [man] in an isolated and abandoned room were . . . an imperative which gave the [eight year old] child victim no alternative but submission to appellant's corrupt scheme." 332 Pa.Super. at 281, 481 A.2d at 614. This eight year old child was physically and emotionally helpless to resist the commands of her twenty year old neighbor, and his perverse acts of sexual intercourse and deviate sexual intercourse were indeed achieved by "forcible compulsion" and "by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution." Accordingly, the evidence was sufficient to sustain his conviction for rape under 18 Pa.C.S.A. § 3121(1) and (2).

Additionally, section 3121(4) creates the category of rape where the actor engages in sexual intercourse with a person "who is so mentally deranged or deficient that such person is incapable of consent." Related categories of the Model Penal Code would seem to be the categories of rape where

> (b) he has substantially impaired her power to appraise or control her conduct by administering or employing without her knowledge drugs, intoxicants or other means for the purpose of preventing resistance; or

> \* \* \* \* \* \*

> (d) the female is less than 10 years old.

and the category of gross sexual imposition where

> (b) he knows that she suffers from a mental disease or defect which renders her incapable of appraising the nature of her conduct. . . .

MPC § 213.1(1)(b) and (d) and (2)(b), respectively. The Pennsylvania legislature simplified this structure and enacted the one category of rape (a felony of the first degree) which would seem to cover all of these Model Penal Code categories.

■ We do not address all of the possible conditions that would demonstrate that a person "is so mentally deranged or deficient that such person is incapable of consent." Suffice it to say that the eight year old child in this case

was "so mentally deficient," as a matter of law, that she was incapable of consenting to an act whose nature she could not appreciate or comprehend; this is the "fair import" of § 3121(4).

The Oxford English Dictionary defines "deficient" as "1. Wanting some part, element, constituent, or characteristic which is necessary to completeness, or having less than the proper amount of it; wanting or falling short *in* something; defective." Webster's New Collegiate Dictionary defines "deficient" as "1. lacking in some necessary quality or element ..." using as an example "deficiency in judgment." And, as noted previously, the Crimes Code explicitly informs us as to when a person is incapable of consent, namely, when "assent" to an act

(1) ... is given by a person who is legally incompetent to authorize the conduct charged to constitute the offense;

(2) ... is given by a person who by reason of youth, mental disease or defect or intoxication is manifestly unable or known by the actor to be unable to make a reasonable judgment as to the nature or harmfulness of the conduct charged to constitute the offense....

18 Pa.C.S.A. § 311(c)(1) and (2).

As Judge Cavanaugh stated in dissent:

The necessary implication of the [Superior Court] majority's decision is that this eight year old child engaged in an act of consensual intercourse with appellant. I cannot agree. There is a serious question that an eight year old child is capable of consenting to sexual intercourse. Common sense and human experience compel us to the conclusion that a child of such tender years should not be expected to know the nature and implications of human sexual intercourse. Since the statute excludes from the consensual defense a victim who is "so mentally deranged or deficient that such person is incapable of consent", how much more so should it be interpreted to protect a child who by reason of her infancy may not be

said to have developed a cognition of the nature of an act of adult sexuality.

332 Pa.Super. at 280, 481 A.2d at 614 (footnotes omitted).[16]

We hold, therefore, that the evidence was sufficient to demonstrate beyond a reasonable doubt that appellee engaged in sexual intercourse with a person (an eight year old child) who was "so mentally ... deficient that such person [was] incapable of consent." 18 Pa.C.S.A. § 3121(4).

■■■ The Superior Court also stated in the instant case that "it seems clear that the act of vaginal intercourse was criminal because of the provisions of § 18 Pa.C.S. § 3122 defining statutory rape and not because it was a forcible rape as defined in 18 Pa.C.S. § 3121." 332 Pa.Super. at 279, 481 A.2d at 613. We reject the implication of this passage that an act of sexual intercourse with a victim who is under the age of fourteen years cannot constitute rape as well as statutory rape where the elements of each distinct offense have been proven beyond a reasonable doubt. As we have held, the elements of the crime of rape have been proven beyond a reasonable doubt as appellee engaged in sexual intercourse [17] with a person not his spouse by forcible compulsion, the threat of forcible compulsion and with a victim so mentally deficient because of her youth as to be legally incapable of consenting to the act of sexual intercourse. Additionally, there is no doubt that appellee was guilty of statutory rape under section 3122 which provides

16. *See Commonwealth v. Stephens,* 143 Pa.Super. 394, 401, 17 A.2d 919, 921 (1941) (citation omitted) (" '[I]t has been held that ... in one case, where [the female] was under the age of ten years, she was incapable of consenting, and the law implied force.' "); *Commonwealth v. Cyaus,* 88 Pa.Super. 227, 229 (1926) ("Where, as here, the female is not only so young [five years of age] that she is incapable of consenting to sexual intercourse, but cannot even entertain a thought upon that subject, a jury is warranted in finding an intent to have carnal knowledge of the child forcibly whenever the evidence warrants a finding that the defendant laid his hands upon her with an intent to carnally know her.").

17. The Crimes Code provides: "Sexual intercourse. In addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required." 18 Pa.C.S.A. § 3101.

that: "A person who is 18 years of age or older commits statutory rape ... when he engages in sexual intercourse with another person not his spouse who is less than 14 years of age." The absence, existence or effectiveness of the victim's consent is immaterial to the crime of statutory rape. Appellee's guilt of this crime was established by the proven elements that he was older than eighteen (he was twenty) years and that he engaged in sexual intercourse with a victim who was younger than fourteen (the child victim was eight) years.

The crimes of rape and statutory rape are no longer mutually exclusive offenses as they were held to be by this Court when statutory rape was defined as "consensual carnal knowledge of a female under the age of sixteen years, by a male, not her husband, older than sixteen...." *Commonwealth v. Walker, supra* 468 Pa. at 332, 362 A.2d 227, overruled in part in *Commonwealth v. Frisbie,* 506 Pa. 461, 465, 485 A.2d 1098 (1984). (*See* note 10, *supra.*) In *Walker,* we held that, since a single act could not be simultaneously consensual and without consent, the appellant there committed only one of the injuries to the Commonwealth proscribed by the crimes of rape and statutory rape and could not, therefore, be convicted of both. With the elimination of the consensual element of statutory rape, this impediment to the dual convictions for rape and statutory rape no longer exists.

 Nor do double jeopardy principles or the doctrine of merger of lesser included offenses prohibit the conviction and sentence for both rape and statutory rape arising from a single act of sexual intercourse. In *Commonwealth v. Norris,* 498 Pa. 308, 319, 446 A.2d 246 (1982), involving a double jeopardy challenge to dual convictions, this Court stated: "unlike the situation in *Walker,* the Commonwealth suffered two injuries from appellant's single act in that appellant not only engaged in forcible intercourse with an individual who was not his spouse, but also corrupted the morals of a child under the age of eighteen." So too in the instant case, the Commonwealth has suffered two injuries

from appellee's single act in that he not only engaged in sexual intercourse by forcible compulsion, the threat of forcible compulsion, and with a victim so mentally deficient as to be incapable of consent, he has also engaged in such acts with a victim under the statutory age of fourteen while he was older than eighteen. The separate injuries are proscribed by separate offenses with distinct elements.

In *Commonwealth v. Sayko*, Pa. (1986), Justice McDermott, speaking for the majority, extrapolated the *Norris* reasoning in the double jeopardy context to a challenge to dual convictions for indecent exposure and indecent assault based upon the doctrine of merger. In that case, Justice McDermott stated for the Court:

> The General Assembly may discern by statute different interests to be protected in the same person during a criminal transaction. There is a difference in fact and in consequence between an indecent touching and an indecent exposure; and a profound difference between both acts and the corruption of a minor. Each contain different elements designed to protect different interests. The corruption of a minor child can only be committed against a minor child, hence the interest to be protected and the age of the victim are elements different from those of indecent assault and indecent exposure, which offenses can be perpetrated against anyone, young or old. So too, are there different interests and different elements dividing an indecent touching and an indecent exposure.

*Id.*, slip op. at 4–5 (footnotes omitted). We therefore held that the offenses charged did not merge and it was not error for the lower court to sentence the defendant therein separately on each offense charged. *See also Commonwealth v. Williams*, 344 Pa.Super. 108, 496 A.2d 31 (1985); *Commonwealth v. Whetstine*, 344 Pa.Super. 246, 496 A.2d 777 (1985); *Commonwealth v. White*, 341 Pa.Super. 261, 491 A.2d 252 (1984). In the crime of statutory rape, the consent of the underage victim is immaterial and is no defense; rather, the legislature has determined that a person eighteen years of age or older commits the crime of

statutory rape (a felony of the second degree) by the act of sexual intercourse with another person not his spouse under the age of fourteen with or without the victim's consent. 18 Pa.C.S.A. § 3122. The crime of rape, as we have discussed, is concerned with the situation where "forcible compulsion" or the threat thereof is used to compel a person to engage in sexual intercourse against her will or with a person who, by reason of being unconscious or mentally deranged or deficient, is incapable of consent. 18 Pa.C.S.A. § 3121. Effective consent is a defense to the crime of rape. 18 Pa.C.S.A. § 311(a). Because the crimes of rape and statutory rape designate separate offenses for different injuries to the Commonwealth, an actor may be convicted and punished for both offenses arising from a single act of sexual intercourse.[18]

For the foregoing reasons, we hold that the Superior Court erred in finding the evidence insufficient to establish the crime of rape under 18 Pa.C.S.A. § 3121, and we reinstate appellee's conviction and judgment of sentence for rape.

In his appeal to the Superior Court, appellee had also challenged his sentences on the grounds that a sentence of six to twenty years was "too harsh and severe for a sexual assault upon a young girl without violence or injury," that he was "entitled to a written statement by the [post verdict motions] Court of the reason why a hearing to reconsider a severe sentence was denied," and that he was entitled to a hearing on his motion to reconsider sentence. It is unclear whether the Superior Court actually resolved these issues. That court stated:

> We have also reviewed the sentences imposed for involuntary deviate sexual intercourse and corrupting the morals

18. Many states have enacted schemes of sexual offenses recognizing the crime of "rape" or other "most serious" sexual offense where the victim is under a certain age (usually 10, 11 or 12) and/or is "physically helpless," in addition to crimes of "statutory rape" where the victim is under a certain age (usually 15 or 14) and the actor over a certain age. The variation among the states and combinations of "age" offenses are too many to catalogue conveniently, but see generally Wharton's, supra at § 293.

of a minor, as well as the court's reasons for these sentences. Contrary to appellant's contention, we perceive no abuse of discretion. The sentence was warranted by the nature of the crimes committed, appellant's prior criminal and psychiatric record, and the potential threat which he presented to the community if he were not confined.

481 A.2d at 610. Nevertheless, the Superior Court vacated all judgments of sentence and remanded for resentencing because "we cannot be certain that the trial court's sentences for such offenses would have been the same if it had known that the conviction for forcible rape would be set aside." *Id.*

Since the conviction for "forcible rape" under section 3121 has now been reinstated, the reason Superior Court gave for remanding to Common Pleas for resentencing disappears. Therefore, no purpose would be served by a remand to Superior Court for consideration of appellee's challenges to the discretionary aspects of his sentence, an issue over which we lack jurisdiction. 42 Pa.C.S.A. § 9781(f). We note, however, that the suggestion that the heinous acts committed upon this young child of tender years was a "sexual assault without violence or injury" is offensive and ignorant of the deep emotional and psychological trauma that in all likelihood will result from appellee's perverse conduct. *See Matter of Pittsburgh Action Against Rape, supra* 494 Pa. at 38–43, 428 A.2d at 138–140 (Larsen, J., dissenting). Mr. Rhodes earned and deserves every day of the sentences lawfully imposed upon him by Judge Alfred J. DiBona, Jr.

Accordingly, the order of the Superior Court is reversed, the conviction for rape is reinstated, and all judgments of sentence are reinstated.

FLAHERTY, HUTCHINSON and PAPADAKOS, JJ., join this opinion.

NIX, C.J., and HUTCHINSON, J., filed concurring opinions.

ZAPPALA, J., filed a concurring opinion which McDERMOTT, J., joined.

NIX, Chief Justice, concurring.

The majority opinion makes it necessary to clarify that the mere minority of the victim has never been construed as preventing the crime from being common law rape, either in its original form or as it has been codified under section 3121 of the Crimes Code, 18 Pa.C.S. § 3121, provided that the requisite forcible element is present on the record. "... [U]nlawful carnal knowledge of any female, regardless of age, which is procured by force and accomplished against the will of the victim, is the crime of rape." *See Commonwealth v. Walker*, 468 Pa. 323, 332, 362 A.2d 227, 231 (1976). Moreover, the force necessary to constitute that crime has been described as force sufficient to overcome the will of the victim. *See Commonwealth v. Williams*, 294 Pa.Super. 93, 439 A.2d 765 (1982). This test has a subjective aspect which takes into account the immaturity of the victim as well as all other factors bearing upon the will of the victim to resist.

The attempt by the majority to suggest the age of the victim alone can eliminate the requirement of force distorts the traditional distinction between statutory and common law rape. The offense of statutory rape is only applicable when the victim is under age, whether or not she has consented to the entry. This is a distinction that our legislature has evidenced a clear intent to preserve in the drafting of sections 3121 and 3122. The fact that the legislature chose to distinguish between the punishment given for a violation of section 3121 as opposed to section 3122 is a judgment that is theirs to make. This Court has no right to overrule that judgment by attempting to obliterate that distinction through case law.

Moreover, the focus by the majority on the force used to accomplish carnal knowledge in this case was gratuitous.

Here there has not been the slightest suggestion that this victim consented to the penetration. The Superior Court, sua sponte, raised this question as a basis for justifying its decision to reverse the rape conviction under section 3121. The law is clear in this Commonwealth that a reviewing court should not address issues that have not been previously advanced by the parties. *See, e.g., Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 507 A.2d 323 (1986); *Estep v. Estep,* 508 Pa. 623, 500 A.2d 418 (1985); *Commonwealth ex rel. Robinson v. Robinson,* 505 Pa. 226, 478 A.2d 800 (1984); *In re: Duncan Trust,* 480 Pa. 608, 391 A.2d 1051 (1978); *Coleman v. Board of Education of School District of Philadelphia,* 477 Pa. 414, 383 A.2d 1275 (1978); *Wiegand v. Wiegand,* 461 Pa. 482, 337 A.2d 256 (1975). It is for this reason that I join in the mandate reversing the Order of the Superior Court.

HUTCHINSON, Justice, concurring.

I join the majority but write separately to emphasize my view that the "forcible compulsion" which distinguishes "Rape" in 18 Pa.C.S. § 3121 from "Statutory Rape" in 18 Pa.C.S. § 3122 is present whenever a victim's governing self-direction is lost. On all the evidence in this record, including the victim's age and injuries, a jury was entitled to infer such compulsion. Certainly, if a grown man can be coerced or compelled to confess to a crime by the questioning of an arresting officer, *see Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961), an eight year old victim of a sexual assault is no less likely to have had her will forcibly overcome by an adult male in the dirty, bare and unfamiliar place in which this crime took place. It is, indeed, time for us to apply to the victims of crime the same protective standards that we give criminal defendants.

ZAPPALA, Justice, concurring.

I concur with the majority's holding that the victim's testimony and the physical evidence of trauma was suffi-

cient to establish the element of forcible compulsion. I cannot accept, however, the majority's conclusion that forcible compulsion would have been established in the absence of that evidence.

The majority's discussion of whether the age of a victim is in itself sufficient to establish forcible compulsion is unnecessary under the factual circumstances presented in this case. I do not join in that portion of the majority opinion and am concerned that the majority's finding that forcible compulsion may be established by a showing of the respective capacities of the defendant and victim will eradicate the distinction between the criminal offenses of rape, 18 Pa.C.S. § 3121, and statutory rape, 18 Pa. C.S. § 3121.

McDERMOTT, J., joins in this concurring opinion.