## Commonwealth v. Morales

C.P. of Berks County, no. 1289/97.

*Steven L. Chung, assistant district attorney,* for Commonwealth.

*Kristin E. Jaquis, assistant public defender,* for defendant.

KELLER, *P.J.,* December 9, 1998—On October 22, 1997, the defendant, Jorge Morales, was found guilty by a jury of one count of rape, one count of statutory sexual assault, three counts of indecent assault, and one count of corruption of minors.[1] Pursuant to 42 Pa.C.S. §9794(a) (Megan's Law), on April 8, 1998, this court ordered an assessment to be performed by the Commonwealth Sexual Assessment Board.[2]

On June 9, 1998, the defendant filed a motion for extraordinary relief challenging the constitutionality of the "sexually violent predator" provisions of Pennsylvania's Megan's Law and to bar a second prosecution. On June 16, 1998, this court denied the motion for extraordinary relief and conducted a hearing to determine whether the defendant was a sexually violent predator. This court received and took note of the statutorily mandated assessor reports.[3] After reviewing reports offered by the two state board assessors, this court found the defendant failed to prove, by clear and con-

---

1. Specifically, the defendant was found guilty of 18 Pa.C.S. §3121(1), 18 Pa.C.S. §3122.1, 18 Pa.C.S. §3126(a)(1), 18 Pa.C.S. §3126(a)(2), 18 Pa.C.S. §3126(a)(8),18 Pa.C.S. §6301(a) respectively. Counts two and eight, rape, 18 Pa.C.S. §3121(2) and indecent exposure, 18 Pa.C.S. §3127 were dismissed.

2. 42 Pa.C.S. §9794(a).

3. 42 Pa.C.S. §9794(c).

vincing evidence, that he was not a sexually violent predator.[4] Accordingly, this court sentenced the defendant to a period of incarceration of seven years to life[5] on count one, rape and six months to 24 months on count nine, corruption of minors. Thereafter, the defendant was advised of his duties to register under the relevant provisions of Megan's Law and he acknowledged the same in writing.[6] (N.T. 6/16/98 pp. 12-13.)

A timely appeal was filed by the defendant to the Superior Court of Pennsylvania on July 8, 1998. Subsequently, this court requested a concise statement of matters complained of on appeal. This concise statement was filed on August 3, 1998. In that first concise statement, defendant raised two issues concerning, first, defendant's status as a sexually violent predator, and second, the constitutionality of Pennsylvania's Megan's Law. Both these issues were addressed in this court's memorandum opinion of August 6, 1998. Subsequently, on August 31, 1998, upon motion of the defendant, this court allowed the public defender to file an amended concise statement of matters complained of on appeal. In this second concise statement, the defendant raises two additional issues:

"(1) The Commonwealth did not provide sufficient evidence to meet its burden of proving beyond a rea-

---

4. A sexually violent predator is defined in 42 Pa.C.S. §9792 as: A person who has been convicted of a sexually violent offense as set forth in section 9793(b) (relating to registration of certain offenders for 10 years) and who is determined to be a sexually violent predator under section 9794(e) (relating to designation of sexually violent predators) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.

5. 42 Pa.C.S. §9799.4(b), (c).

6. 42 Pa.C.S. §9795(b).

sonable doubt the charges of rape, statutory sexual assault, indecent assault and corruption of minors.

"(2) The sentencing court did not provide adequate reasons on the record for deviating from the sentencing guidelines and in imposing a sentence that is manifestly excessive."

This opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure and for the following reasons, we request that defendant's appeal be denied; however, this court requests that the defendant be remanded for resentencing in light of a recent Superior Court decision.

## SUFFICIENCY OF THE EVIDENCE

In defendant's first allegation of error, he contends that the evidence was insufficient to support a verdict of guilty. We disagree.

With respect to the sufficiency of the evidence, to sustain a conviction, the standard of review is as follows:

"In reviewing a challenge to the sufficiency of the evidence, we must determine whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense [   ] charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt. . . . This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. . . . Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. The fact-finder is free to believe all, part,

or none of the evidence. . . . The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the jury unless the evidence be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances." *Commonwealth v. Sanders,* 426 Pa. Super. 362, 367, 627 A.2d 183, 185 (1993) (citations omitted); see *Commonwealth v. Hodge,* 441 Pa. Super. 653, 656-57, 658 A.2d 386, 387-88 (1995).

The testimony of the victim alone is sufficient to sustain a rape conviction. *Commonwealth v. Pride,* 252 Pa. Super. 34, 380 A.2d 1267 (1977). In order for there to be sufficient evidence for the charge of rape, the Commonwealth must prove that the defendant engaged in sexual intercourse, with the complainant, by force or compulsion.[7] "Forcible compulsion is an act, including physical force as well as moral, psychological or intellectual force, used to compel a person to engage in sexual intercourse against that person's will. . . . Moreover, the degree of that force is relative and depends on the totality of the facts and circumstances of the particular case. . . . The victim need not resist a person trying to force sexual intercourse against her will." *Commonwealth v. Riley,* 434 Pa. Super 414, 417, 643 A.2d 1090, 1091 (1994) (citing *Commonwealth v. Rhodes,* 510 Pa. 537, 510 A.2d 1217 (1986)). (citations omitted) Furthermore, when determining whether moral, psychological or intellectual force exists, a court should consider the following factors: "the respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident

7. 18 Pa.C.S. §3121.

was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress." *Rhodes, supra* at 556, 510 A.2d at 1227.

To prove the crime of statutory sexual assault, the Commonwealth must prove beyond a reasonable doubt, that the defendant engaged in sexual intercourse with a complainant under the age of 16 years and that the defendant is four or more years older than the complainant and the complainant and the defendant are not married to each other. 18 Pa.C.S. §3122.1. To prove the crime of indecent assault, the Commonwealth must prove all the elements provided for in 18 Pa.C.S. §3126. In pertinent part the statute provides that:

"(a) Offense defined.—A person who has indecent contact with the complainant or causes the complainant to have indecent contact with the person is guilty of indecent assault if:

"(8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other." 18 Pa.C.S. §3126.

Indecent contact requires the touching of the intimate parts of another without her consent for the purpose of gratifying sexual desire in either person. *Commonwealth v. Grayson,* 379 Pa. Super. 55, 549 A.2d 593 (1988). And finally, corruption of minors is statutorily defined as:

"(a) Offense defined.—

"(1) Whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, . . ., commits a misdemeanor of the first degree." 18 Pa.C.S. §6301.

Furthermore, to decide what conduct can corrupt the morals of a minor, the court should apply, "the common sense of the community, as well as the sense of decency, propriety and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it." *Commonwealth v. Decker,* 698 A.2d 99 (Pa. Super. 1997) (quoting *Commonwealth v. Randall,* 183 Pa. Super. 603, 133 A.2d 276 (1957), *cert. denied,* 355 U.S. 954, 78 S.Ct. 539, 2 L.Ed.2d 530 (1958)).

Instantly, the testimony at trial established that:

On March 13, 1997, the victim, T.G., was 14 years old and living at 333 Washington Street, Reading, Berks County, Pennsylvania. She was living there with her boyfriend, John Colon a.k.a. Harry, and Harry's cousin Jose Colon a.k.a. Cheno. The defendant was a friend of Harry's and through that friendship had daily contact with the victim. From that contact, the defendant knew the fact that the victim was 14 on the day of this incident. (N.T. 10/21/97 p. 9.)

At approximately 10 p.m. on March 13, 1997, T.G. was alone in the apartment when the defendant arrived, ostensibly to talk with Harry. After T.G. informed the defendant that Harry was not at home, he decided to stay and talk with her. Eventually, the defendant and T.G. had a conversation about Harry's infidelity with another girl about a week before. This conversation took place in the living room of the apartment. At that point in the conversation, the defendant told T.G. that he could, "find somebody to get him (Harry) back." T.G. declined the defendant's offer. (N.T. 10/21/97 p. 18.) At one point T.G. had to go to the bedroom to shut off the television. After she turned off the television, she continued through the bedroom into the kitchen

before attempting to return to the defendant in the living room. As she was returning to the living room, she was intercepted by the defendant in the bedroom. When the defendant got close to her, he blew in her face. (N.T. 10/21/97 p. 20.) The victim ignored it, at first, and tried to push her way passed the defendant, but as both T.G. and the defendant were in the doorway separating the bedroom from the living room, the defendant stopped and "just started kissing (her) and putting his hands up (her) shirt." (N.T. 10/21/97 pp. 22-23.) The victim testified that the defendant was putting his hands all over her; specifically she testified that his hands were on, "my breasts, my stomach, my hips, my waist." (N.T. 10/21/97 p. 23.) She tried to push his hands away, but his hands were "like springs" and as she would push them away, he would bring them right back. (N.T. 10/21/97 pp. 24-25.) T.G. testified that she did not want this to happen and that she repeatedly told the defendant to "stop" and "don't do this." (N.T. 10/21/97 p. 25.)

Eventually there was a knock on the door and the defendant stopped his attack on the victim. As T.G. went to open the front door, the defendant retreated to the area of the bedroom or kitchen. T.G. unlocked the door and had a short conversation with the person at the door. As the conversation concluded the man at the door ran up the stairs to the third floor, and unexpectedly, T.G. saw the defendant on the stairs leading up to the landing leading to the front door of the apartment. She testified that she did not tell the visitor about the defendant's attack on her because she thought "he (visitor) knew him (defendant) and wouldn't believe (her)." (N.T. 10/21/97 p. 33.) Additionally, she thought the defendant was still in the bedroom or kitchen because she never heard the door from the kitchen to the fire

escape open. (N.T. 10/21/97 p. 34.) The defendant again came into the apartment. Almost immediately the defendant continued his attack on T.G. Eventually, he tells her to lay down; which she refuses to do. The defendant then got on his knees in front of her. As he kisses her stomach, he begins to pull down her pants and underwear. (N.T. 10/21/97 p. 37.) She tries unsuccessfully to pull them up. The defendant, however, got back up on his feet and moved himself behind the victim and "told (her) to bend down." (N.T. 10/21/97 p. 39.) She tried to resist, but the defendant had his hands on her back and was forcing her to bend over. While the defendant has his hand on her back, she is resisting, crying, and telling him to stop, and at some point she could feel his penis enter her vagina. (N.T. 10/21/97 pp. 40-41.) This went on for 10 to 15 minutes, and after it was over, the defendant left.

Additionally, Criminal Investigator Thomas Yeich, testified that he took a statement from the defendant on March 19, 1998, only six days after the attack took place. At the time of the statement the defendant indicated that he was 31 years old. (N.T. 10/21/97 p. 89.)

Based on the aforementioned evidence, as testified to at trial, the evidence is clearly sufficient to sustain verdicts for rape, statutory sexual assault, indecent assault, and corruption of minors. Therefore, it is the opinion of this court that the Commonwealth met its burden and proved each of the elements beyond a reasonable doubt. Accordingly, this claim should be denied.

## DEVIATION FROM SENTENCING GUIDELINES AND EXCESSIVE SENTENCE

The final issue raised by the defendant and addressed in this opinion is whether this court provided adequate

reasons, on the record, for deviating from the sentencing guidelines and in imposing a sentence that is manifestly excessive. While this court disagrees with the defendant's allegations of error, this court would request that the defendant be remanded for resentencing, based on the constitutional status of Pennsylvania's Megan's Law.

Initially, a court must determine whether the defendant has raised a substantial question justifying review of the discretionary aspects of his sentence.[8] *Commonwealth v. Wagner*, 702 A.2d 1084 (Pa. Super. 1997). A substantial question exists where the defendant advances a colorable argument that the trial judge's actions were inconsistent with a specific provision of the Sentencing Code, or contrary to the fundamental norms underlying the sentencing process. *Id.* A claim of excessiveness of sentence does not raise a substantial question where the sentence imposed is within the statutory limits. However, a claim that the sentencing court did not adequately explain its reasons for sentencing outside the statutory guidelines does raise a substantial question. *Id.* Furthermore, sentencing is a matter vested within the sound discretion of the sentencing judge, and a sentence will not be disturbed absent a manifest abuse of that discretion. *Commonwealth v. Johnson,* 446 Pa. Super. 192, 666 A.2d 690 (1995). At sentencing, a judge may consider any legal factor in deciding whether a defendant should be sentenced within the aggravated

---

8. 42 Pa.C.S. §9781. Appellate review of sentence

"(b) Allowance of appeal.—The defendant or the Commonwealth may file a petition for allowance of appeal of the discretionary aspects of a sentence for a felony or a misdemeanor to the appellate court that has initial jurisdiction for such appeals. Allowance of appeal may be granted at the discretion of the appellate court where it appears that there is a *substantial question* that the sentence imposed is not appropriate under this chapter." (emphasis added by author)

range and, for the sentence to be adequate, the sentencing judge's reasons must reflect this consideration and, finally, the decision regarding the aggravation will not be disturbed absent a manifest abuse of that discretion. *Commonwealth v. Prestidge,* 372 Pa. Super. 282, 539 A.2d 439 (1988).

Instantly, this court is of the opinion that the defendant's claim of excessiveness does not raise a substantial question, as the seven-year minimum sentence imposed is within the statutory limits for a conviction for rape. Furthermore, the seven-year minimum sentence is within the aggravated range of the sentencing guidelines; therefore, that aspect of the sentence does not raise a substantial question.

Moreover, on June 16, 1998, this court held a sentencing hearing pursuant to the guidelines set forth under Pennsylvania's Megan's Law. The Commonwealth introduced the two statutorily mandated assessor reports.[9] This court found that the defendant had failed to rebut the presumption that he is a sexually violent predator, as defined in 42 Pa.C.S. §9792. After determination that the defendant was a sexually violent predator, this court determined that the defendant would be sentenced on counts one and nine, rape and corruption of minors. In consideration of the defendant's sentence, this court reflected:

"The Court: Very well.

"Defendant does have a prior record score. He has a prior record score of two—I'm sorry, three.

"With regard to the rape, the standard range is 54 to 72, mitigated is 42, aggravated is 84.

---

9. 42 Pa.C.S. §9794(c).

"And the corruption of minors, I don't have a guideline for that. Someone's going to have to help me out there. It's under the old guideline form.

"Mr. Sweitzer: Your honor, the O.G.S. would be a five. In this case, the prior record score would be a zero. Therefore, the standard range would be R.S. to six. The aggravated range would be up to nine months."

Additionally, prior to handing down the sentence this court stated the following:

"The Court: The court believes that total confinement is necessary in this case. We believe that based on the defendant's prior record for criminal activity, there's an undue risk that he would commit another crime based on his record.

"A lesser sentence would depreciate the seriousness of the crime of the defendant.

"He's in need of correctional rehabilitation that can be most effectively provided by institutional supervision in a state correctional facility.

"We also believe that an aggravated-range sentence is required here, primarily due to the age of the victim and the age of the defendant. The age of 14 years is still relatively young girl, and the defendant is in his 30s. So that there is a great disparity in age between the two individuals here. For that reason, basically, we believe an aggravated-range sentence is required.

"We will commit him for a period of not less than seven years nor more than 15 years to the Bureau of Corrections for confinement in a state—no. I'm sorry. Nor more than life imprisonment. I forgot about Megan's Law. Seven years to life imprisonment, Bureau of Corrections, for confinement in a state correctional facility,

effective this date, credit for time served, costs, $100 fine. . . .

"The Court: . . . At count nine, corruption of minors, we will commit him for a period of not less than six months nor more than 24 months to the Bureau of Corrections. That would be effective this date and will run concurrently with the sentence we just imposed on count one, costs, $100 fine."

Accordingly, it is the opinion of this court that the reasons provided to the defendant for his sentence were proper and adequate and the sentence handed down to the defendant was not manifestly excessive. However, it is also the opinion of this court that the defendant should be remanded back to this court for resentencing.

Recently, the Pennsylvania Superior Court addressed the issue of whether Megan's Law improperly places the burden of persuasion on a defendant in violation of federal procedural due process. The Superior Court concluded "that the due process clause of the federal constitution is violated by the provisions of the Act which requires the offender to rebut a presumption and which do not impose upon the prosecution the burden of persuasion by clear and convincing evidence. As a consequence, [the court struck] as unconstitutional section 9794 of title 42 and all remaining sections of the Act which refer to the designation of a 'sexually violent predator.' " *Commonwealth v. Halye,* 719 A.2d 763, 769 (Pa. Super. 1998).

Therefore, although this court does not find any validity in defendant's allegations of error, this court feels that pursuant to the ruling of the Superior Court, the defendant's case should be remanded for resentencing in accordance with the ruling of the Superior Court.