J-S25024-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| GEORGES SAGE BERLIN | |
| Appellant | No. 1574 WDA 2014 |

Appeal from the Judgment of Sentence entered September 5, 2014
In the Court of Common Pleas of Westmoreland County
Criminal Division at No: CP-65-CR-0004430-2012

BEFORE:  BENDER, P.J.E., STABILE, and PLATT,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 30, 2015**

Appellant Georges Sage Berlin appeals from the judgment of sentence entered in the Court of Common Pleas of Westmoreland County ("trial court"), following his jury conviction for two counts of rape,[1] two counts of involuntary deviate sexual intercourse ("IDSI"),[2] aggravated indecent assault,[3] two counts of indecent assault,[4] unlawful restraint,[5] and stalking.[6] Upon review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3121(a)(1), (2).

[2] 18 Pa.C.S.A. § 3123(a)(1), (2).

[3] 18 Pa.C.S.A. § 3125(a)(1).

[4] 18 Pa.C.S.A. § 3126(a)(1), (2)

[5] 18 Pa.C.S.A. § 2902(a)(2).

[6] 18 Pa.C.S.A. § 2709.1(a)(2).

The trial court summarized the facts and procedural history of this case as follows.

The charges in this case arose from an incident that occurred on or about October 18, 2012 in Murrysville, Westmoreland County. The testimony at trial established that the victim, HW, lived with her two minor daughters on Impala Drive in the municipality of Murrysville in 2012. HW testified that she met [Appellant] through Facebook, and that they had become romantically involved in the summer of 2012. The relationship was rocky, however, and HW ended the relationship with [Appellant] in September 2012. Although [Appellant] sought reconciliation, HW, was not "sold" on the idea that it was a good decision. Eventually, HW broke off all contact with [Appellant] because of his troubling behavior towards her.

On October 18, 2012, HW was at home getting ready for bed when she heard the doorbell ring. When she reached the door, [Appellant] asked her to let him into her home, and created a scene. Concerned for her neighbors, HW did allow [Appellant] to enter her house, but as soon as she did, he pushed her up against the wall and told her repeatedly that they were meant to be together. HW asked [Appellant] to leave, but he continued to "rant." She was eventually able to move into her living room, hoping to diffuse [sic] the situation, but [Appellant] continued to insist that she was meant to be his, making little sense, and becoming more agitated. HW asked him repeatedly to leave her home, but [Appellant] began grabbing at her breasts, pushed her down on the couch and physically and sexually assaulted her. HW fought against [Appellant] and became hysterical when she felt that she could not breathe. [Appellant] stopped the assault at that point and apologized for trying to rape her, telling her that we was sorry but that he was crazy over her and that she was his. HW believed that [Appellant] was then going to leave, but he attacked her again before she was able to call for help. He resumed the assault, and although HW fought against him, [Appellant] raped and sexually assaulted her.

After the rape, HW was able to get into her bathroom and lock the door behind her. [Appellant] used a kitchen knife to pry the bathroom door open, and he helped her back into her clothing but would not let her leave the bathroom. He again began speaking in a rambling and a subtly threatening manner. Finally, [Appellant] told HW that he and his family would "take care" of her ex-husband, and he threatened that if he ever saw her with another man, he would kill her. When [Appellant] left shortly thereafter, HW believed that it was the early morning hours of October 19, 2012. Her children were still asleep upstairs.

        HW testified that she locked all of the doors and went upstairs to her bedroom. She texted a friend, but her friend did not answer the phone. She then located the number for a women's shelter and spoke to a counselor from the Blackburn Center. She testified that she did not call the police because she did not want her neighbors and her children to be awakened. Although she was in considerable pain, she waited until her children were on the bus to school before she went to Forbes Regional Hospital in Monroeville. There, she was examined, a rape kit was performed, and her clothing was collected. She then agreed to meet with Murrysville Police, and gave a written statement. After she left the police station, and as she was driving home, HW noticed that a vehicle was following her. When the car flashed its lights at her to pull over, she did so. [Appellant] was driving the car, which HW then recognized as being his mother's vehicle, and he rolled down the window as if he wanted to speak with her. HW testified that she was afraid, and so she immediately pulled away and called the police. [Appellant] continued to follow her, at times pulling in front of her vehicle to block her progress, but HW was eventually able to drive back to the police station.

        [Appellant] called HW's cell phone on numerous occasions and left several voice messages, which HW recorded to a separate medium. HW agreed to return [Appellant's] phone calls while having the conversation recorded by law enforcement. In that recorded conversation, [Appellant] apologized repeatedly to HW for his actions and begged her to forgive him for raping her.

Trial Court Rule 1925(a) Opinion, 11/13/14, at 1-3. Following the jury conviction on all charges, the trial court sentenced Appellant to an aggregate of 17 to 34 years' imprisonment, followed by five consecutive years' probation. Appellant timely appealed to this Court.

In his Pa.R.A.P. 1925(b) statement of errors complained of on appeal, Appellant argued, *inter alia*, that "[t]here is insufficient evidence of force or threat of force to sustain the convictions of [r]ape, IDSI, [a]ggravated [i]ndecent [a]ssault, and [i]ndecent [a]ssault."[7] Appellant's Rule 1925(b)

---

[7] "A claim challenging the sufficiency of the evidence is a question of law." ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000).
*(Footnote Continued Next Page)*

Statement, 10/17/14. Appellant also argued the trial court erred in prohibiting Appellant from introducing evidence of HW's contraction of a sexually transmitted disease."[8] *Id.*

_(Footnote Continued)_ ─────────────

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014), *appeal denied*, 95 A.3d 275 (Pa. 2014).

[8] The admission of evidence is committed to the sound discretion of the trial court. *See Commonwealth v. Chamberlain*, 731 A.2d 593, 595 (Pa. 1999). An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused. *Commonwealth v. Spiewak*, 617 A.2d 696, 699 n.4 (Pa. 1992) (citation omitted). A defendant has a fundamental right to present evidence provided it is relevant and not subject to exclusion under any established evidentiary rule. *Commonwealth v. McGowan*, 635 A.2d 113, 115 (Pa. 1993). Even so, relevant evidence is admissible only if its probative value outweighs its prejudicial impact. *Commonwealth v. Robinson*, 721 A.2d 344, 350 (Pa. 1998).

In response, the trial court issued a Pa.R.A.P. 1925(a) opinion. The trial court first addressed Appellant's contention that the Commonwealth failed to prove the element of forcible compulsion or threat of forcible compulsion. In so doing, the trial court noted:

> The facts here as established by the victim's testimony clearly established [Appellant's] use of forcible compulsion or threat of forcible compulsion in this case. HW testified that [Appellant] pushed her up against the wall, grabbed at her breasts, pushed her back onto a couch, causing her head to hit against the couch and a glass table, and pinned her down so that she felt like she could not breathe. Ultimately, [Appellant] physically restrained her in a "bear hug," holding her down so she could not get up. In the recorded telephone conversation, [Appellant] acknowledged that HW had been kicking and hitting him and trying to push him off her. HW testified that after she was too tired to fight anymore, "[Appellant] had restrained me by pulling my legs up . . . ."[FN]
>
> > [FN.] He had restrained me by pulling my legs up and he proceeded to, um, finger and lick me and bit me down there, shoved his hand in, just tried—I tried to kick him, tried to punch him. I couldn't get him to stop.
> >
> > . . . .
> >
> > If you can give me one second, please. Um, he started to lick me down there and at least twice he bit me, um, on my skin, just right at the top of the vagina. I think I was struggling at that point to just not totally zone out because I was frozen. I was, like, frozen and when he bit me it kind of, like, made me fight again.
> >
> > . . . .
> >
> > [Appellant] got on top of me. Um, he had, um—he had gotten on top of me. He had my legs pulled up in the air so I was pinned on my back with my legs up this way (indicating).
> >
> > . . . .
> >
> > He put his penis inside of me and was just very aggressive to the point where he was sweating and I could feel the sweat dripping off of him into my eyes and onto my body.

N.T. Trial, 4/7/14, at 77-80.

Trial Court Rule 1925(a) Opinion, 11/13/14, at 6.[9]

The trial court next addressed Appellant's argument that it erred in prohibiting the introduction of evidence concerning HW's contraction of gonorrhea, which Appellant sought to introduce to demonstrate that he did not have sexual contact with HW. In addressing this argument, the trial court concluded it did not abuse its discretion in excluding evidence of gonorrhea because Appellant failed to comply with Section 3104 of the Rape Shield Law,[10] as he did not file a written motion. *See Commonwealth v. Burns*, 988 A.2d 684, 690 (Pa. Super. 2009) ("We have repeatedly stated that a defendant who desires to introduce evidence of the victim's prior sexual conduct must file a written motion and make a specific offer of proof

_____

[9] The trial court observed the count of aggravated indecent assault (18 Pa.C.S.A. § 3125(a)(1)) and one count of indecent assault (18 Pa.C.S.A. § 3126(a)(1)) in this case did not require proof of forcible compulsion.

[10] Section 3104 provides in relevant part:

> **(b) Evidentiary proceedings.**--A defendant who proposes to offer evidence of the alleged victim's past sexual conduct pursuant to subsection (a) *shall file a written motion* and offer of proof at the time of trial. If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an in camera hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

18 Pa.C.S.A. § 3104(b) (emphasis added).

prior to trial.") (citing **Commonwealth v. Beltz**, 829 A.2d 680, 684 (Pa.

Super. 2003) (failure to make written motion bars review of decision at trial

to exclude)).

The trial court further concluded:

> Even if [Appellant] had filed such a written motion, the evidence would still have been excluded as irrelevant. Th[e trial court] determined that there had been no testimony, nor was any testimony proffered, to establish that gonorrhea could only be contracted by sexual contact and if so, what the incubation period for gonorrhea was. Additionally, [Appellant] **did not deny having been with HW on the night in question**; rather, he suggested that the sexual encounter was not forced. His own words to HW in messages left and in the recorded telephone call, however, contradict this theory, and also contradict any suggestion that another assailant had committed the rape. The only real purpose [Appellant] would have had in introducing this evidence would have been to embarrass HW or question her virtue. As such this evidence was absolutely prohibited by the Rape Shield Law, and th[e trial court] did not err in prohibiting its introduction.

Trial Court Rule 1925(a) Opinion, 11/13/14, at 9-10 (emphasis added).

On appeal, Appellant repeats the foregoing assertions of error. After

careful review of the parties' briefs, the record on appeal, and the relevant

case law, we conclude that the trial court's 1925(a) opinion authored by the

Honorable Rita Donovan Hathaway, thoroughly and adequately disposes of

Appellant's issues on appeal.[11]   **See** Trial Court Rule 1925(a) Opinion,

_____

[11] To the extent Appellant argues evidence was insufficient to sustain a conviction for unlawful restraint, we reject this argument as waived. Appellant failed to raise this issue in his Rule 1925(b) statement. **See** Pa.R.A.P. 1925(b)(4); **see also see Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a 1925(b) statement will be deemed waived."). Even if this issue was not waived, we would conclude it lacks merit because, based on our review of the record, the Commonwealth
*(Footnote Continued Next Page)*

11/13/14, at 4-10. We direct that a copy of the trial court's November 13, 2014 Rule 1925(a) opinion be attached to any future filings in this case.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/30/2015

---

*(Footnote Continued)* ————————————

provided sufficient evidence at trial to sustain the conviction for unlawful restraint.

## IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PENNSYLVANIA – CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | ) | |
| | ) | |
| VS. | ) | No.    4430 C 2012 |
| | ) | |
| GEORGES SAGE BERLIN, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION OF THE COURT ISSUED PURSUANT TO PA.R.A.P. RULE 1925

The Defendant, Georges Sage Berlin, ("Berlin") was charged by criminal information filed at 4430 C 2012 in the Court of Common Pleas of Westmoreland County, Pennsylvania with two counts of Rape (18 Pa.C.S. §3121(a)(1) and (2)), two counts of Involuntary Deviate Sexual Intercourse (18 Pa.C.S. §3123(a)(1) and (2)), Aggravated Indecent Assault (18 Pa.C.S. §3125(a)(1)), two counts of Indecent Assault (18 Pa.C.S. §3126(a)(1) and (2)), Unlawful Restraint (18 Pa.C.S. §2902(a)(2)) and Stalking (18 Pa.C.S. §2709.1(a)(1)).  He was convicted of all counts following a jury trial held on April 7-10, 2014.  On September 5, 2014, Berlin was sentenced to an aggregate sentence of 17 to 34 years in state prison, followed by a consecutive 5 years of probation.  This appeal timely followed.

### FACTUAL HISTORY:

The charges in this case arose from an incident that occurred on or about October 18, 2012 in Murrysville, Westmoreland County.  The testimony at trial established that the victim, HW, lived with her two minor daughters on Impala Drive in the municipality of Murrysville in 2012.  HW testified that she met Berlin through Facebook, and that they had become

1

romantically involved in the summer of 2012. (TT 54-56).[1] The relationship was rocky, however, and HW ended the relationship with Berlin in September of 2012. Although Berlin sought reconciliation, HW was not "sold" on the idea that it was a good decision. Eventually, HW broke off all contact with Berlin because of his troubling behavior toward her. (TT 60-64).

On October, 18, 2012, HW was at home getting ready for bed when she heard the doorbell ring. When she reached the door, Berlin asked her to let him into her home, and created a scene. Concerned for her neighbors, HW did allow Berlin to enter her house, but as soon as she did, he pushed her up against the wall and told her repeatedly that they were meant to be together. (TT 67). HW asked Berlin to leave, but he continued to "rant." She was eventually able to move into her living room, hoping to diffuse the situation, but Berlin continued to insist that she was meant to be his, making little sense, and becoming more agitated. (TT 68-69). HW asked him repeatedly to leave her home, but Berlin began grabbing at her breasts, pushed her down on the couch and physically and sexually assaulted her. HW fought against Berlin and became hysterical when she felt that she could not breathe. Berlin stopped the assault at that point and apologized for trying to rape her, telling her that he was sorry but that he was crazy over her and that she was his. (TT 70-71). HW believed that Berlin was then going to leave, but he attacked her again before she was able to call for help. He resumed the assault, and although HW fought against him, Berlin raped and sexually assaulted her. (TT 72-81).

After the rape, HW was able to get into her bathroom and lock the door behind her. Berlin used a kitchen knife to pry the bathroom door open, and he helped her back into her clothing but would not let her leave the bathroom. He again began speaking in a rambling and a subtly threatening manner. Finally, Berlin told HW that he and his family would "take care" of

---

[1] Numerals in parenthesis preceded by the letters "TT" refer to specific pages of the transcript of the trial in this matter, held April 7-10, 2014 and made a part of the record herein.

2

her ex-husband, and he threatened that if he ever saw her with another man, he would kill her. When Berlin left shortly thereafter, HW believed that it was the early morning hours of October 19, 2012. Her children were still asleep upstairs. (TT 81-83).

HW testified that she locked all of the doors and went upstairs to her bedroom. She texted a friend, but her friend did not answer the phone. She then located the number for a women's shelter and spoke to a counselor from the Blackburn Center. She testified that she did not call the police because she did not want her neighbors and her children to be awakened. Although she was in considerable pain, she waited until her children were on the bus to school before she went to Forbes Regional Hospital in Monroeville. There, she was examined, a rape kit was performed, and her clothing was collected. (TT 83-87). She then agreed to meet with Murrysville Police, and gave a written statement. After she left the police station, and as she was driving home, HW noticed that a vehicle was following her. When the car flashed its lights at her to pull over, she did so. Berlin was driving the car, which HW then recognized as being his mother's vehicle, and he rolled down the window as if he wanted to speak with her. HW testified that she was afraid, and so she immediately pulled away and called the police. Berlin continued to follow her, at times pulling in front of her vehicle to block her progress, but HW was eventually able to drive back to the police station. (TT 92-94).

Berlin called HW's cell phone on numerous occasions and left several voice messages, which HW recorded to a separate medium. HW agreed to return Berlin's phone calls while having the conversation recorded by law enforcement. In that recorded conversation, Berlin apologized repeatedly to HW for his actions and begged her to forgive him for raping her. (TT 104-105, Commonwealth's Exhibit #12 and #13).

3

**ISSUES PRESENTED ON APPEAL:**

I.    DID THE COMMONWEALTH PRESENT SUFFICIENT EVIDENCE OF FORCE OR THREAT OF FORCE TO SUPPORT THE VERDICTS OF GUILTY?

Berlin initially suggests that the Commonwealth presented insufficient evidence of "force" or "threat of force" to sustain the jury's verdicts of guilty as to the charges of Rape, IDSI, Aggravated Indecent Assault and Indecent Assault. In reviewing a claim that the verdict is against the sufficiency of the evidence, a court must

> determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. Additionally, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.

*Commonwealth v. Feliciano,* 67 A.3d 19, 23-24 (Pa.Super.2013), *citing Commonwealth v. Stokes,* 38 A.3d 846, 853–854 (Pa.Super.2011) (internal citations and quotations omitted).

To prove the crime of Rape as charged in Counts 1 and 2 of the Criminal Information, the Commonwealth was required to prove beyond a reasonable doubt that Berlin engaged in sexual intercourse with HW by forcible compulsion or by a threat of forcible compulsion such that

4

would prevent a reasonable person from resisting. *18 Pa.C.S. §3121(a)(1) and (2).* To prove the crime of Involuntary Deviate Sexual Intercourse as charged in Counts 3 and 4 of the Criminal Information, the Commonwealth was required to prove beyond a reasonable doubt that Berlin engaged in deviate sexual intercourse with HW by forcible compulsion or by a threat of forcible compulsion such that would prevent a reasonable person from resisting. *18 Pa.C.S. §3123(a)(1) and (2).* To prove the crime of Indecent Assault as charged in Count 7 of the Criminal Information, the Commonwealth was required to prove beyond a reasonable doubt that Berlin had indecent contact with HW or caused HW to have indecent contact with him, and that he did so by forcible compulsion. *18 Pa.C.S. §3126(a)(2) and (3).* The crime of Aggravated Indecent Assault as charged in count 5 the Criminal Information and the charge of Indecent Assault as Charged in Count 6 of the Criminal Information did not allege that Berlin used forcible compulsion, but merely that he engaged in the acts constituting Aggravated Indecent Assault and Indecent Assault without HW's consent. Therefore, no element of force or threat of force was necessary to sustain those convictions.

> It is well-established that in order to prove the "forcible compulsion" component, the Commonwealth must establish, beyond a reasonable doubt, that the defendant "used either physical force, a threat of physical force, or psychological coercion, since the mere showing of a lack of consent does not support a conviction for rape ... by forcible compulsion." *Commonwealth v. Brown,* 556 Pa. 131, 136, 727 A.2d 541, 544 (1999). In *Commonwealth v. Rhodes,* 510 Pa. 537, 510 A.2d 1217 (1986), our Supreme Court stated that forcible compulsion includes "not only physical force or violence, but also moral, psychological or intellectual force used to compel a person to engage in sexual intercourse against that person's will." *Rhodes,* 510 Pa. at 555, 510 A.2d at 1226. Further, the degree of force required to constitute rape is relative and depends on the facts and particular circumstances of a given case. *Commonwealth v. Ruppert,* 397 Pa.Super. 132, 579 A.2d 966, 968 (1990), *appeal denied,* 527 Pa. 593, 588 A.2d 914 (1991).

5

*Commonwealth v. Eckrote,* 12 A.3d 383, 387 (Pa.Super. 2010). The facts here as established by the victim's testimony clearly established Berlin's use of forcible compulsion or threat of forcible compulsion in this case. HW testified that Berlin pushed her up against a wall, grabbed at her breasts, pushed her back onto a couch, causing her head to hit against the couch and a glass table, and pinned her down so that she felt like she could not breathe. Ultimately, Berlin physically restrained her in a "bear hug," holding her down so she could not get up. In the recorded telephone conversation, Berlin acknowledged that HW had been kicking and hitting him and trying to push him off her. (TT 104-105, Commonwealth's Exhibit #12 and #13). HW testified that after she was too tired to fight any more, "[Berlin] had restrained me by pulling my legs up..." (TT 77-78). "The Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence, and the jury, in passing upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence." *Commonwealth v. Arrington,* 86 A.3d 831, 840 (Pa. 2014), *citing Commonwealth v. Laird,* 605 Pa. 137, 988 A.2d 618, 624 (2010). The jury, as judges of credibility, was free to believe or disbelieve the testimony of HW. The evidence was more than sufficient to establish the element of forcible compulsion or the threat of forcible compulsion to support the jury's verdicts.


## II. DID THE COMMONWEALTH PRESENT SUFFICIENT EVIDENCE TO SUPPORT THE VERDICT OF GUILTY AS TO INVOLUNTARY DEVIATE SEXUAL INTERCOURSE?

Berlin next alleges that the evidence was insufficient to support the verdict of guilty as to Involuntary Deviate Sexual Intercourse, specifically regarding the element of Deviate Sexual Intercourse. To prove the crime of Involuntary Deviate Sexual Intercourse as charged in Counts 3 and 4 of the Criminal Information, the Commonwealth was required to prove beyond a

6

reasonable doubt that Berlin engaged in deviate sexual intercourse with HW by forcible compulsion or by a threat of forcible compulsion such that would prevent a reasonable person from resisting. *18 Pa.C.S. §3123(a)(1) and (2).* Section 3101 of the Crimes Code defines "deviate sexual intercourse" as "sexual intercourse per os or per anus between human beings and any form of sexual intercourse with an animal. The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures." 18 Pa.C.S.A. § 3101.

HW's testimony clearly established that Berlin engaged in sexual intercourse per os (by mouth) by licking and biting her vagina. (TT 77-80). See, e.g., ***Commonwealth v. Ortiz,*** 311 Pa.Super. 190, 457 A.2d 559 (1983) ("We therefore will not hold that a finding of penetration of the vagina is necessary for the jury to find "penetration however slight" under Section 3101, and since penetration of the vagina, in essence the farther reaches of the female genitalia, is not necessary to find penetration under Section 3101"). See also, ***Commonwealth v. Ziegler,*** 379 Pa.Super. 515, 550 A.2d 567 (1988), *rev'd on other grounds* (Twelve-year-old victim's testimony that defendant had licked her vagina was sufficient evidence of penetration to support defendant's conviction for involuntary deviate sexual intercourse.) Therefore, the verdict was supported by sufficient evidence.

### III. DID THE COMMONWEALTH PRESENT SUFFICIENT EVIDENCE TO SUPPORT THE VERDICT OF GUILTY AS TO STALKING?

Berlin next suggests that the evidence was insufficient to sustain the jury's verdict of guilty as to the charge of Stalking. To prove the crime of Stalking as charged in Count 9 of the Criminal Information, the Commonwealth was required to prove beyond a reasonable doubt that Berlin "engage[d] in a course of conduct or repeatedly commits acts toward [HW], including

7

following [HW] without proper authority, under circumstances which demonstrate either an intent to place [HW] in reasonable fear of bodily injury or to cause substantial emotional distress to [HW]." 18 Pa.C.S. §2709.1(a)(1). HW testified as to Berlin's repeated calls to her and messages left on her voice mail, and his actions toward her the day after the rape, immediately after she had been interviewed by the police, where Berlin followed her through Murrysville in his mother's car, impeded her progress with the car and confronted her while in that car. She further testified that she was "really, really scared" by Berlin's actions on the day after the rape. (TT 93). This testimony, which was clearly believed by the jury, was sufficient to establish beyond a reasonable doubt the elements of Stalking and supported the jury's verdict of guilty.

## IV. DID THE TRIAL COURT ERR IN PROHIBITING THE INTRODUCTION OF EVIDENCE PURSUANT TO THE RAPE SHIELD ACT?

The Rape Shield Law (18 Pa.C.S. §3104) prohibits "irrelevant and abusive inquiries" about the prior sexual conduct of an alleged victim of sexual assault. *Commonwealth v. Burns*, 988 A.2d 684 (Pa.Super. 2009), *appeal denied,* 8 A.3d 341 (Pa. 2010). "The purpose of the Rape Shield Law is to prevent a trial from shifting its focus from the culpability of the accused toward the virtue and chastity of the victim." *Id.* at 689. The Act specifically provides:

> **(a) General rule.**--Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

> **(b) Evidentiary proceedings.**--A defendant who proposes to offer evidence of the alleged victim's past sexual conduct pursuant to subsection (a) shall file a written motion and offer of proof at the time of trial. If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an in camera hearing and

8

shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

*18 Pa.C.S.A. § 3104.* On cross-examination, Berlin sought to question Kiley Schultz, a physician assistant in the field of emergency medicine, about the contents of HW's medical records which indicated that HW tested positive for gonorrhea when she was examined at Forbes Regional Hospital. Defense counsel suggested that the information was relevant because, "if we were using the defense that it wasn't me and if she is infected and my client has never been treated, I think that it's a factor outside of past promiscuous behavior. It's a relevant factor." (TT 206). Counsel further argued, "The relevance and argument that I think can be made to the jury, there is no evidence of any condom or anything being used. My client has never been treated for any of this [sic] illness, and if she had a sexually transmitted disease, then I could argue to the jury and they can infer that they did not have sexual intercourse." (TT 207).

This court determined that the proposed inquiry was irrelevant and was prohibited under the Rape Shield Law. First, although the defendant had the medical records prior to trial, no written motion was filed pursuant to 18 Pa.C.S. §3104(b). However, even if Berlin had filed such a written motion, the evidence would have still been excluded as irrelevant. This court determined that there had been no testimony, nor was any testimony proffered, to establish that gonorrhea could only be contracted by sexual contact and if so, what the incubation period for gonorrhea was. Additionally, Berlin did not deny having been with HW on the night in question; rather, he suggested that the sexual encounter was not forced. His own words to HW in messages left and in the recorded telephone call, however, contradict this theory, and also contradict any suggestion that another assailant had committed the rape. The only real purpose Berlin would have had in introducing this evidence would have been to embarrass HW or

9

question her virtue. As such this evidence was absolutely prohibited by the Rape Shield Law, and the court did not err in prohibiting its introduction.

## CONCLUSION:

For the foregoing reasons of fact and of law, this court has determined that the issues raised on appeal lack merit, the court did not err and the verdicts were supported by the evidence presented.

BY THE COURT,

_November 13, 2014_
Date

_Rita Donovan Hathaway,_ J.
**Rita Donovan Hathaway, Judge**

ATTEST:

_____
Clerk of Courts

c.c.   File
       Judith Petrush, Esq. – Assistant District Attorney
       Brian Aston, Esq. – Counsel for the Defendant

10