J-S49020-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TROY D. POSEY | |
| Appellant | No. 1869 EDA 2015 |

Appeal from the Judgment of Sentence May 22, 2015
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0003465-2014

BEFORE:  PANELLA, OLSON, JJ. and STEVENS, P.J.E.*

MEMORANDUM BY OLSON, J.:                 **FILED AUGUST 10, 2016**

Appellant, Troy Posey, appeals from the judgment of sentence entered on May 22, 2015.  We affirm.

The trial court ably summarized the underlying facts of this case:

> On March 22, 2014, at approximately [10:00 p.m., J.P., aged 19,] exited a [SEPTA] train at 69th Street Terminal in Upper Darby, Pennsylvania, after visiting her boyfriend in Northeast Philadelphia.  [J.P. (hereinafter "J.P." or "the victim")] had been traveling on the train from Philadelphia, and planned to take a bus from the 69th Street Terminal to her residence in West Chester, Pennsylvania.  However, after some inquiries, [J.P.] realized she had missed the last bus to West Chester.  She did not have anyone at home to contact to pick her up.  [J.P.] was stranded in an unfamiliar location, at a late hour[,] and sought help.
>
> . . . [D]uring the course of the trial, testimony revealed that [J.P. had] been diagnosed with Asperger's Syndrome, a social disorder. . . .  This disorder affects how [J.P.] handles "high pressure situations," and interactions with strangers.

*Former Justice specially assigned to the Superior Court.

Initially, [J.P.] approached two police officers who directed her to walk two blocks to the police station for help. Upon arrival at the police station, [J.P.] was unable to get into the building. [J.P.] then went across the street to knock on the door of the fire station, but there was no response, and the building was locked. [J.P.] then went to a nearby [WaWa] food market to ask for some money for a taxi ride home, but was asked to leave.

[J.P.] then sought shelter at the Bethel Community Baptist Church located at 7766 Wayne Avenue, Upper Darby, Pennsylvania, located behind the [WaWa]. [J.P.] saw [Appellant] outside the church smoking, and asked if she could stay at the church until the next bus arrived in the morning. [Appellant] introduced himself as "Frank" and invited her inside the church. He brought her into an office inside the church and told her she could sleep on the couch, while he sat on a recliner. [Appellant] told [J.P.] to come sit next to him in front of the recliner. [J.P. testified at trial] that she did not want to move closer to him, but did so because she was scared and did not know what would happen if she did not comply with his request.

[Appellant] began rubbing [J.P.'s] head, shoulders, and breasts over and underneath her clothing, and unhooked her bra. [J.P.] asked [Appellant] to stop[;] however, [Appellant] did not [stop]. [J.P.] then asked if she could go back to the couch because she was tired, and [Appellant] followed her there.

[J.P.] fell asleep and awoke to [Appellant on top of her,] turning her onto her back[,] and pulling off her pants. [Appellant] had his penis out . . . , and with his hands he was holding down [J.P.'s] hips. [J.P.] attempted to slide away from [Appellant], pushing against the couch to try to get away, but [Appellant] held her down. [Appellant] then began to insert his penis into [J.P.'s] vagina. [J.P.] repeatedly told [Appellant] during intercourse that she "needed to go" and "needed to leave"; however, [Appellant] would not let her up. She also testified as to saying ["no" multiple times]. . . .

[Appellant] then performed oral sex on [J.P.'s] vagina and anus, which again was without her consent. After he was

- 2 -

done, he told her to go into the bathroom and clean up. [Appellant] then forced [J.P.] to pose nude and he took photographs of her with his cell phone. Appellant told [J.P.] to pose doing a "peace sign" "and make myself seem like I wanted to do that and like I enjoyed it, which I did not." [J.P.] did not want to take these pictures, but complied because she was too afraid to leave, because she did not want to get hurt. When asked why [she] didn't just run for the door[, J.P.] answered: "I didn't know what he was capable of doing."

[J.P.] then got dressed and sat back down on the couch and [Appellant] told her to get undressed again. [J.P.] then got undressed again and stated she did so because she "didn't know what was going to happen if I didn't. Like if I can get hurt or worse, I didn't want to risk it." [Appellant] then began to rape [J.P.] again. Again, he inserted his penis into her vagina against her protests. [J.P.] verbally stated that she wanted to leave. [Appellant] also touched [J.P.'s] breasts and butt and had sexual intercourse with her against her will. Afterwards, [Appellant] again made [J.P.] go into the bathroom and clean off. [J.P.] got redressed afterwards.

[Appellant] then for a third time told [J.P.] to get undressed and [J.P.] did so. She [testified that] she complied with [Appellant] because "I was really scared." [Appellant] then raped [J.P.] for a third time by inserting his penis into her vagina. He also attempted to insert his penis into her anus but was unsuccessful. Again, [J.P.] tried to move away from [Appellant], but could not because [Appellant] was holding her down. During the third sexual attack, [J.P.] again verbally stated "no," that she did not want to have sex, and that she "had to go." [J.P.] also testified as to crying during all three occasions. After the third and final instance, [Appellant] again instructed [J.P.] to wash off, however [J.P.] refused. . . .

After the entire ordeal, at approximately 6:00 a.m., [Appellant] sat next to [J.P.] on the couch and apologized. [As J.P. testified, Appellant said "I'm so sorry I did this to you. I should have never did this to you"]. He also stated that he wanted to marry [J.P.] and have her move in with him. [Appellant] finally allowed [J.P.] to leave and gave her

money. [J.P.] then took a bus from the 69th Street Terminal and arrived home in West Chester at approximately 11:00 a.m.

[J.P.] did not initially report this to anyone. A few days later, she finally told her sister what had happened to her. Then, at school[,] she was researching "rape" and another student told the administration at school. She then told her parents and filed a police report the following day. [Appellant was arrested on April 3, 2014].

Trial Court Opinion, 11/10/15, at 1-5 (internal citations omitted).

On December 4, 2014, a jury found Appellant guilty of rape by forcible compulsion, sexual assault, indecent assault without consent, and indecent assault by forcible compulsion.[1] The trial court sentenced Appellant to an aggregate term of 106 to 212 months in prison, followed by 5 years of probation. This timely appeal followed.

Appellant presents two questions for review:[2]

1) Whether the evidence is insufficient to sustain the conviction for rape since the Commonwealth failed to prove, beyond a reasonable doubt, that [Appellant] engaged in sexual intercourse with a complainant by forcible compulsion or threat of forcible compulsion?

2) Whether the evidence is insufficient to sustain the conviction for indecent assault since the Commonwealth

_____

[1] 18 Pa.C.S.A. §§ 3121(a)(1), 3124.1, 3126(a)(1), and 3126(a)(2), respectively.

[2] The trial court ordered Appellant to file and serve a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Appellant complied and, within his Rule 1925(b) statement, Appellant listed the claims he currently raises on appeal.

failed to prove, beyond a reasonable doubt, that [Appellant] made indecent contact with a complainant without consent, by forcible compulsion, or threat of forcible compulsion?

Appellant's Brief at 5.

We review Appellant's sufficiency of the evidence challenges under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Brown**, 23 A.3d 544, 559-560 (Pa. Super. 2011) (*en banc*), *quoting* **Commonwealth v. Hutchinson**, 947 A.2d 800, 805-806 (Pa. Super. 2008).

Appellant first challenges the sufficiency of the evidence to support his rape conviction. Appellant's Brief at 5.

A person commits the crime of rape by engaging in sexual intercourse with another by forcible compulsion or threat of forcible compulsion. *Commonwealth v. Buffington*, 828 A.2d 1024, 1031 (Pa. 2003); 18 Pa.C.S.A. § 3121(a)(1). Appellant concedes that he engaged in sexual intercourse with the complainant. His sufficiency argument concerns the element of forcible compulsion. Appellant's Brief at 10. Appellant contends that, because the victim did not resist or attempt to escape in any way he deems significant, the Commonwealth cannot demonstrate that Appellant used forcible compulsion to accomplish the sexual acts. *Id.* at 12-13.

The Crimes Code defines "forcible compulsion" in relevant part as "compulsion by use of physical, intellectual, moral, emotional, or psychological force, either express or implied." 18 Pa.C.S.A. § 3101.

> It is well-established that in order to prove the "forcible compulsion" component, the Commonwealth must establish, beyond a reasonable doubt, that the [Appellant] used either physical force, a threat of physical force, or psychological coercion, since the mere showing of a lack of consent does not support a conviction for rape . . . by forcible compulsion. In *Commonwealth v. Rhodes*, 510 A.2d 1217 (Pa. 1986), our Supreme Court stated that forcible compulsion includes "not only physical force or violence, but also moral, psychological[,] or intellectual force used to compel a person to engage in sexual intercourse against that person's will." *Rhodes*, 510 A.2d at 1226. Further, the degree of force required to constitute rape is relative and depends on the facts and particular circumstances of a given case.

*Commonwealth v. Eckrote*, 12 A.3d 383, 387 (Pa. Super. 2010). Thus, the element of "forcible compulsion" denotes a perpetrator's use of superior

force, physical or non-physical, to compel a person to engage in sexual intercourse against that person's will. *Rhodes*, 510 A.2d at 1226. Stated another way, one can commit rape by the application of superior psychological or emotional force, whether express or implied, in the complete absence of physical violence. *Commonwealth v. Gonzalez*, 109 A.3d 711, 720 (Pa. Super. 2015). It is not necessary to prove that a perpetrator physically overpowered the complainant. *Rhodes*, 510 A.2d at 1227 n.15; *see also* 18 Pa.C.S.A. § 3107 (Resistance to physical force is not necessary to show forcible compulsion.).

> The Superior Court has held that the degree of force involved in rape is defined, not in terms of the physical injury to the [complainant], but in terms of the effect it has on the [complainant's] volition. Accordingly, the force necessary to support convictions for rape need only be such as to establish lack of consent and to induce the [complainant] to submit without additional resistance.

*Commonwealth v. Ables*, 590 A.2d 334, 337 (Pa. Super. 1991) (internal quotations, citations, and corrections omitted).

To determine whether Appellant's use of physical or psychological coercion is sufficient to have been compulsive, we examine the totality of the circumstances, including such factors as:

> the respective ages of the victim and the accused, the respective mental and physical conditions of the victims and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination[,] or custodial control over the victim, and whether the victim was under duress.

***Commonwealth v. Gonzalez***, 109 A.3d 711, 721 (Pa. Super. 2015) (internal quotations, citations, and emphasis omitted).

A complainant's testimony as to her state of duress and apprehension, as well as the defendant's treatment of her, can be sufficient to sustain the verdict. ***See Commonwealth v. Rough***, 418 A.2d 605, 608 (Pa. Super. 1980); ***see also Commonwealth v. Castelhun***, 889 A.2d 1228, 1232 (Pa. Super. 2005) ("[t]he uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses") (internal quotations and citations omitted).

The victim encountered Appellant alone and in an unfamiliar location, having exhausted any other options for a safe return home and afraid to call her mother. Once inside the church, Appellant touched her breasts and upper body, over and underneath her clothing, without her consent. N.T. 12/2/14, at 253-254. The victim testified that she was scared and asked Appellant to stop, but that she did not resist because she was afraid of "what he might do." ***Id.*** at 189 and 253-254. She was tired and wanted to sleep, and she asked Appellant if she could go lie down on the couch, essentially asking permission to remove herself from his advances. ***Id.*** at 191. Appellant instead followed her and waited until she fell asleep. The victim awoke to Appellant, on top of her with his penis out and his hands on her hips. She attempted to maneuver away from Appellant on the couch, but was unable because of the force of his body against hers. ***Id.*** at 196-197.

The victim testified that she could not escape him "because he was on top of me and it was difficult to try to get out." *Id.* at 260.  She testified:

> Q: Why couldn't you maneuver out of there?
>
> A: His weight and the way I was positioned.

*Id.* at 210.  Appellant then penetrated her vaginally, before performing oral sex on her against her will.  *Id.* at 199.  Further, the victim testified that she only felt it was safe for her to try to leave after Appellant committed his third act of nonconsensual intercourse with her.  *Id.* at 212.  She testified:

> Q: Okay.  After all of that did you – what happened next?
>
> A: Then I was finally allowed to leave.

*Id.* at 213.

Appellant used physical force to remove the victim's pants as she was sleeping, and then used the force of his body against hers to restrain her movement as he completed the act.  The victim's testimony is sufficient to establish these facts, and the jury was free to credit her testimony over Appellant's theory of the case.  *Castelhun*, 889 A.2d at 1232; *Commonwealth v. Hlatky*, 626 A.2d 575, 580 (Pa. Super. 1993).

Furthermore, Appellant acted from a position of superior psychological and emotional force, in circumstances where the victim was particularly vulnerable.  Alone with a stranger in an unfamiliar place, she could not have known what he might or might not do should she choose to oppose him.  Meanwhile, she was temporarily dependent on Appellant for safety and

shelter during the late hours of the night. In this situation, the implication that the victim could face further harm if she chose to fight or flee could induce a person to submit "without additional resistance." **Ables**, 590 A.2d at 337. Even if Appellant had not used physical force to accomplish nonconsensual intercourse, the coercive, psychological impact of the victim's distressful and foreboding situation would be sufficient to show forcible compulsion. **See Rhodes**, 510 A.2d at 1226; **Gonzalez**, 109 A.3d at 720; **Ables,** 590 A.2d at 337. The victim's testimony as to her apprehension and fear is sufficient to prove this element, if credited by the trier of fact. **Rough**, 418 A.2d at 608.

To show the degree of force required to constitute rape, we note the trial court's application of the **Gonzalez** factors to this case:

> (1) There was a fairly significant age difference between [the victim] and the Appellant. [The victim] was 19-years-old, and the Appellant was 49-years-old at the time of the incident. (2) There were fairly significant differences in both the mental and physical conditions of [the victim] and the Appellant. [The victim] was diagnosed with Asperger's Syndrome, a social disorder, two years prior to the incident. This disorder affected how [the victim] handled "high pressure situations," and interactions with strangers. [The victim] was in a state of distress as she was alone, in an unfamiliar place, in the early morning hours, and was desperately seeking shelter for the night. (3) The physical setting in which the incident took place was very isolated and the atmosphere was one which left [the victim] very vulnerable. . . . Appellant brought [the victim] into a private office in the church, no one else other than the Appellant was in the church at the time of the incident, and [the victim] was tired, nervous, and frightened from the prior events of that evening. (4) The Appellant was in a position of authority over the Appellant as he was

- 10 -

significantly older, she was in his place of employment, and she was relying on him for safety and shelter. (5) The Appellant was not in custodial control over [the victim]. (6) [The victim] was under duress, although the Appellant did not directly threaten [the victim], there was psychological duress. [The victim] was alone in the Appellant's place of employment, she was significantly younger than the Appellant, she was nervous and frightened by the preceding events of the night, and she had no means of transportation to get home.

Trial Court Opinion, 11/10/15, at 10-11. Given the power disparity inherent in this situation, a rape conviction does not require proof of overwhelming, physical force.

For the foregoing reasons, we find the evidence sufficient to prove that Appellant used physical force and complainant's position of vulnerability and distress to compel her to engage in intercourse against her will. The evidence is sufficient to sustain Appellant's conviction for rape beyond a reasonable doubt.

We now turn to Appellant's challenge to the evidentiary sufficiency of his indecent assault convictions.

The Crimes Code defines indecent assault in relevant part as:

A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and: (1) the person does so without the complainant's consent; or (2) the person does so by forcible compulsion.

18 Pa.C.S.A. § 3126(a)(1) and (2).

- 11 -

The jury convicted Appellant of indecent assault without consent, under Subsection (a)(1), and indecent assault by forcible compulsion, under Subsection (a)(2). According to the Commonwealth, Appellant, and the trial court, Appellant's indecent assault convictions arose from Appellant's touching of the victim's breasts prior to sexual intercourse.[3] Trial Court Opinion, 11/10/15, at 15 and 25-27; Appellant's Brief at 19. Appellant concedes that he touched the victim's breasts and upper body and that this could constitute "indecent contact." As above, he argues that the Commonwealth failed to prove that he made indecent contact without consent or that he made indecent contact by forcible compulsion. Appellant's Brief at 18.

As to his indecent assault without consent conviction, Appellant argues that the evidence is insufficient because the victim never unequivocally communicated her non-consent to him. Appellant's Brief at 20. Appellant's argument is reliant upon the victim's testimony during cross-examination:

> Q: Yes. So you didn't tell him to stop?
>
> A: I might have thought I did but I wouldn't – it probably didn't come out.

N.T. Trial, 12/2/14, at 256.

---

[3] We conclude that the evidence was sufficient to support Appellant's indecent assault convictions for his touching of the victim's breasts prior to sexual intercourse. Therefore, we will not determine whether the convictions could have been supported by Appellant's other actions on the night in question.

Yet, Appellant's claim on appeal fails because the victim specifically testified that, while Appellant was touching her, she told Appellant to stop. The victim testified:

Q: He actually – he unhooked your bra at that point in time, didn't he?

A: Yes.

Q: And he asked you if it was okay, didn't he?

A: No.

Q: He didn't ask you if it was okay, if you were comfortable?

A: Not that I remember.

Q: Not that you remember. Were you rubbing his legs at this point in time?

A: No.

Q: You were not?

A: No.

Q: Did you ask him to stop what he was doing?

A: At one point I said stop.

N.T. Trial, 12/2/14, at 254.

Further, the victim testified:

Q: All right. Did he say anything to you at that point?

A: He told me to move more closer to him.

Q: What's going through your head at this point? I mean did you want to move closer to him?

A: No.

Q: Did you end up actually doing it, moving closer?

A: Yes.

Q: Why?

A: I was scared and I didn't know what would happen.

. . .

Q: Okay. Did you want him to rub your head?

A: No.

Q: Did you do anything to try to, you know, kind of like express interest that you wanted him to touch you?

A: No.

*Id.* at 189-190.

The testimony and the sequence of events seen as a whole, viewed in the light most favorable to the Commonwealth, establishes that the victim stated her opposition to Appellant's initial touching of her breasts. Therefore, Appellant's claim to the contrary fails. *See Hlatky*, 626 A.2d at 580; *Commonwealth v. Aguado*, 760 A.2d 1181, 1185 (Pa. Super. 2000) (*en banc*).

Next, Appellant challenges the sufficiency of his conviction for indecent assault by forcible compulsion because, he argues, he did not make indecent contact with the victim's body by physical force or restraint. Appellant's Brief at 19-20.

The element of forcible compulsion required to sustain a conviction under Subsection (a)(2) is the same as that for rape by forcible compulsion,

as related above. *See* Pa.C.S.A. § 3101 (defining forcible compulsion for all sexual offenses in Chapter 31 of the Crimes Code). As above, viewing the evidence in the light most favorable to the Commonwealth, the entire sequence of sexual acts was committed through physical coercion, psychological coercion, and the implied threat of force. This is sufficient to meet the element of forcible compulsion. The Commonwealth need not prove that Appellant used physical force, restraint, or express threats to accomplish the touching of complainant's chest. *See Rhodes*, 510 A.2d at 1226 ("we hold that 'forcible compulsion' as used in section 3121(1) includes not only physical force or violence but also moral, psychological or intellectual force used to compel a person to engage in sexual intercourse against that person's will"); *Gonzalez*, 109 A.3d at 720 (same); *Ables*, 590 A.2d at 337.

After review, we find that all of Appellant's challenges to the sufficiency of the evidence are without merit.

Judgment of sentence affirmed.